THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BERNDT T. BEST, Defendant-Appellant.

First District (2nd Division)    No. 79-1137

Opinion filed June 30, 1981.

Daniel J. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Gordon A. Greenberg, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant was convicted in a jury trial of deviate sexual assault, rape, burglary and armed violence. Defendant's appeal raises as issues whether: the State's inquiry into defendant's opinion concerning the veracity of the State's witnesses constitutes plain error; defendant's conviction for rape must be vacated because it was the underlying offense for the armed violence conviction; and defendant's sentences were excessive. For the following reasons, we affirm.

The victim testified that on March 23, 1978, she lived in a third-floor apartment with her two children in Hanover Park, Illinois. She locked the apartment door before going to sleep at about 12:50 a.m. She was later awakened when the pillow was pulled out from under her head. She opened her eyes and saw a man standing over her. She screamed, jumped up and ran into a hallway and turned on the lights. She then observed defendant, the apartment building maintenance man, who she identified in court. She observed her clock and saw that it was 2:15 a.m. She knew and had spoken to defendant on a number of different occasions and had signed the lease for the apartment through him.

After the victim turned on the light, she asked defendant what he wanted. He approached her, pulled out a knife, put his hand over her mouth, turned off the light, forced her into the living room, and

demanded that she remove her clothes. Defendant then raped her and forced her to commit numerous deviate sexual acts with him, including fellatio, cunnilingus, and sodomy, all described in detail by the victim, which need not be repeated here. Defendant placed the knife to her neck several times and threatened to kill her if she did not submit to his demands. The entire assault lasted 1½ hours. Afterwards, defendant got dressed and warned that he would kill her if she called the police. When defendant left, she locked the door, noticing that there had been no forced entry. She called the police, but not immediately, because defendant warned her that if he saw a police car pull up, he would get to her before the police did. When the police arrived, they took her to the hospital. She later identified defendant in a lineup at the police station. She identified photographs, subsequently introduced into evidence, of bruises and cuts she received from defendant that night.

Police Officer Ernest Martino testified that on March 23, 1978, he and Officer Dennis Knight received a radio dispatch to proceed to the victim's apartment. When they arrived, the victim was hysterical. She identified her assailant as a man named Best who lived in the same apartment complex. Martino and Officer Codaro, who had just arrived, then went to defendant's apartment. A woman, who identified herself as Mrs. Best, answered the door and allowed the police to enter. Defendant was found sleeping on the bathroom floor. They awoke him, told him he was under arrest for suspicion of rape, and gave him *Miranda* warnings. Defendant responded, "I wasn't over there tonight." Police Officer Vernon Koenen testified that he transported the victim to a hospital after her assault. When he interrogated defendant later at the police station, defendant was told he was being held on suspicion of rape. He was asked to describe the victim, and responded "brown hair, skinny, and not too good looking." Neither Koenen nor anyone else had told defendant who the victim was.

The State rested and the defense presented the following case.

Janet Best, defendant's wife, testified that defendant arrived home at 2:20 a.m. His passkey to the apartments in the complex had broken prior to that evening. Defendant fell asleep in the bathroom and she fell asleep at about 3 a.m. At about 5 a.m., two policemen came to the door and arrested defendant, who was still sleeping on the bathroom floor.

Defendant testified on his own behalf. He was employed as an assistant foreman at Mercury Metal and as the apartment maintenance manager. On the evening of March 22, 1978, he went to the Peppermint Stick Lounge where he had several drinks, then left for home at 1:30 a.m. He arrived at the apartment complex at 1:41 a.m. and observed a man, about 5'7" tall wearing a black jacket and dark pants, run from the building. He looked for the man but was unable to find him and he then made a building check. He returned to his apartment and his wife let him

in. He became ill and went into the bathroom where he fell asleep. When the police arrived, they told him he was being arrested for disorderly conduct. He did not tell them, "I wasn't over there tonight." At the police station, he was advised by police that he was charged with rape and was told the name of the victim. He only described the victim after the police told him who she was.

Two defense witnesses, Richard Davis and Robert Cleary, testified that they had seen defendant at the Peppermint Stick Lounge until about 2 a.m., when they saw him leave. Both men thought he was not intoxicated when he left the lounge.

The jury returned a verdict of guilty on three counts of deviate sexual assault, one count of rape, one count of burglary, and one count of armed violence. Defendant was sentenced to 7 years for burglary, and 15 years for each of the other counts, all sentences to run concurrently.

The defense raises as its first point of error the State's inquiry into defendant's opinion as to the veracity of the State's witnesses whose testimony was in conflict with his, which is said to constitute plain error, requiring reversal. The victim had testified that defendant wore ankle high work boots when he assaulted her. This was corroborated by the police officers' testimony that when they arrested defendant he put on a pair of work boots. Defendant testified he was wearing street shoes, not work boots, when he went out that night and had fallen asleep with these street shoes on. During the State's cross-examination of defendant, the prosecutor asked: "Okay, now, you are telling the jury, if I understand you, you are telling the jury that the police are lying about the shoes, aren't you?" Defense counsel's objection to this question was overruled, and defendant responded that the police were lying. The prosecutor then asked if the police were lying about the statements he made to them and, after defense counsel's objection was overruled, defendant responded in the affirmative. The prosecutor then asked if the victim was lying about whether there were street lights outside which could illuminate her apartment; defendant responded that there are street lights outside of the victim's apartment. During closing argument, the prosecutor stated that "the defendant has come forward and told the jury that all these policemen—all those witnesses were brought in here, they are all lying."

■■ Defendant asserts that the questions and closing comment constitute reversible error, citing *People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746, *People v. Graves* (1978), 61 Ill. App. 3d 732, 378 N.E.2d 293, and *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450. The State responds that any error was waived by defendant's failure to adequately specify this error in his post-trial motion, citing *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454, *People v. White* (1977), 52 Ill. App. 3d 517, 367 N.E.2d 727, and *People v. Marshall* (1977), 50 Ill. App.

3d 615, 365 N.E.2d 1122. The questions of which defendant complains are improper, should not be asked, and are amenable to being stricken when objections to them are made. They are not deemed sufficiently grave so as to warrant a new trial however, where, as here, the evidence is not "closely balanced," but is rather overwhelming as to defendant's guilt. (*People v. Cohen* (1980), 83 Ill. App. 3d 706, 404 N.E.2d 976; *People v. White* (1977), 52 Ill. App. 3d 517, 367 N.E.2d 727.) Further, as the State claims, veracity opinion questions alone do not constitute reversible error. In the three cases cited by defendant, *Riley, Graves*, and *Hicks*, reversals were based upon combinations of numerous errors, a factor absent in this case.

■■ Defendant next claims that his conviction for rape must be vacated because it was the underlying offense for the armed violence conviction. Another opinion filed today, in *People v. Lynom* (1981), 97 Ill. App. 3d 1113, considered the question, *inter alia*, of whether that defendant's conviction of voluntary manslaughter is a lesser included offense of armed violence because both offenses arose under the same transaction. We examined two cases decided by the Illinois Supreme Court and filed on June 4, 1981, *People v. Myers* (1981), 85 Ill. 2d 261, and *People v. Haron* (1981), 85 Ill. 2d 281, in each of which the armed violence statute (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1 through 33A—3) was considered. After reviewing those cases, we concluded that the supreme court in *Haron* recognized that a predicate felony offense which could be committed without the use of a deadly weapon could give rise to the second charge of armed violence when the offense is committed with the use of a deadly weapon. We said in *Lynom*:

> "If the predicate offense is a felony by statutory definition when committed *without* possession or use of a dangerous weapon, such an offense may support a second charge, armed violence, when committed *with* possession or use of such a weapon. (*Haron*, as applied to Kehm.)"

We held in *Lynom* that voluntary manslaughter when committed with a dangerous weapon became the basis of the additional charge under the provisions of the armed violence statute. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) Defendant in the instant case committed the predicate offense of rape. Having done so by utilizing a five-inch bladed knife, which is considered a category I deadly weapon under section 33A—1, makes this act amenable to the additional charge of armed violence. His conviction and sentences for both offenses must therefore be affirmed.

■■ Defendant asserts that the 15-year sentences were excessive because they ignore defendant's potential for rehabilitation. The State responds that under the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, pars. 11—1,

11—2, and 33A—2) and the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(3)), defendant could receive sentences between 6 and 30 years on each of the convictions, and that 15 years was not excessive in light of the heinous nature of the crimes. The State cites *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, for the proposition that the trial court is entitled to great deference in sentencing decisions, and *People v. Patterson* (1980), 90 Ill. App. 3d 775, 413 N.E.2d 1371, where defendant's 15-year sentence for rape was held not to be excessive under facts not as heinous as those in the principal case. We agree, and see no occasion upon which to alter the sentences imposed.

For the foregoing reasons, we affirm the convictions and sentences for deviate sexual assault, rape, burglary and armed violence.

Affirmed.

DOWNING and PERLIN, JJ., concur.