THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LESTER BURNS, Defendant-Appellant.
First District (2nd Division)    No. 80-1002

Opinion filed August 4, 1981.

Ralph Ruebner, of State Appellate Defender's Office, and Cecile Singer, of Singer & Stein, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael Shabat, Warren A. Zimmerman, and Sandra M. Stavropoulos, Asssistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant Lester Burns was charged by information with two counts of armed robbery. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2.) After a jury trial defendant was found guilty on both counts and sentenced to a term of 7 years. On appeal defendant asks this court to determine (1) whether the circuit court erred when it instructed the jury regarding the law of admissions (IPI Criminal No. 3.06) and (2) whether defendant was proved guilty beyond a reasonable doubt.

Testimony by witnesses for the State indicates that on February 4, 1978, at about 4:30 a.m., Benton Hall worked as an attendant at a gas station located in the 1400 block of West 95th Street, Chicago. As Hall was arranging stock in the station's office, two men approached the locked glass door and indicated they wanted to buy cigarettes. Hall unlocked the door and one of the men, identified at trial as wearing a Fu Man Chu type mustache (FMC), displayed a handgun. The other man, identified as defendant, searched Hall and took his keys, $6, and a coin changer with its belt. Defendant then acquired the pistol and FMC began taking merchandise from wall display units. As the two placed some of the merchandise in a purse, James Johns drove his white 1974 Pontiac up to the office. Johns could see three men in the station. When defendant saw Johns' car, he said, "That's my ride—that's our ride." Johns walked into the office and asked for a package of cigarettes. He saw merchandise spread over the floor of the office. Defendant said it was a "stick up." Defendant

either jarred the gun to Johns' neck or hit Johns' head behind the ear. Defendant held the pistol within a foot of Johns' face. Defendant said, "give me your wallet." Johns removed his wallet from his pocket and dropped it to the floor. FMC picked it up. Defendant then made several adamant demands that Johns give defendant everything else Johns possessed. After Johns stated he had nothing else to give up, defendant asked for the keys to the Pontiac. Johns told him the keys were in the car.

FMC left the station with merchandise in this hands and entered the car. About 20 seconds later, defendant began to leave when Hall asked for the return of his keys. Defendant said he would mail them to Hall. Defendant then left the station's office walking backwards, holding merchandise and the gun. The gun fell to the ground. Defendant picked it up and got into the waiting car.

Meanwhile, Police Sergeant Uradell Holmes sat in his parked squad car across the street from the service station. He became suspicious when he saw four men gathered in the station office at that time of day. After watching the station for about three minutes, he saw FMC exit the office and enter the parked Pontiac. About 20 seconds later, he saw defendant leave the station and enter the same car. The car then sped away and the two victims ran out to signal Holmes that they had been robbed. Holmes drove his squad car in pursuit of the Pontiac. The Pontiac spun out of control as FMC attempted a turn on the slick pavement about one-half block from the station. FMC got out of the car and pointed a gun at Holmes. Holmes fired a shot and FMC ran away. Defendant exited the car and said, "I give up." Holmes then perfected defendant's arrest and looked within the Pontiac where he found mechandise strewn about the car.

Defendant testified he was compelled to aid FMC in the robbery. According to defendant, he passed FMC as he was walking to the gas station to buy cigarettes. The two casually greeted each other. When defendant arrived at the station the glass door was locked. He knocked for admission and when the door opened, FMC, who had followed defendant, stated, "Don't say nothing." FMC had a gun in his hand. FMC said it was a stick up. Everything defendant did subsequently was at FMC's explicit or implicit direction. FMC held a large silver gun directed at defendant throughout the robbery. Defendant further testified that he followed FMC to the waiting car because he feared for his safety. Finally, he denies making the inculpatory statements attributed to him. Defendant waited until about 30 minutes after his arrest to explain that he was compelled to aid FMC.

## I

Defendant first contends the circuit court erred when it instructed the

jury on the law of admissions.[1] Defense counsel objected to the instruction on the ground that defendant made no admission during trial. The court gave the instruction over that objection.

This issue was waived by defendant's failure to specifically set it forth in his written post-trial motion. (*People v. Edwards* (1978), 74 Ill. 2d 1, 4, 383 N.E.2d 944, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862; *People v. Marshall* (1977), 50 Ill. App. 3d 615, 623, 365 N.E.2d 1122.) Defendant's general post-trial allegation of a due process denial is inadequate to preserve this issue for review. (See *People v. Edwards*.) Finally, defendant's argument on appeal does not mirror his objection to the instruction at trial. Accordingly, the issue is not properly preserved.

Nevertheless, review of defendant's contention on appeal discloses the instruction does not constitute a ground for reversal. Defendant argues the instruction was given without sufficient evidence of an admission. First, he contends the statement, "I give up," was not considered an admission by the State. The State failed to disclose the statement in its answer to discovery under Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412(a)(ii)). Second, defendant claims neither that statement nor any other record satisfies the definition of an admission. Finally, defendant contends the statement was inadmissible hearsay.[2].

■■ An admission is any statement or conduct by a defendant which, when considered with other facts in evidence, permits an inference of guilt of the offense charged. (*People v. Bundy* (1979), 79 Ill. App. 3d 127, 135, 398 N.E.2d 345; *People v. Walters* (1979), 69 Ill. App. 3d 906, 919, 387 N.E.2d 1230, *appeal denied* (1979), 79 Ill. 2d 623; *People v. Veal* (1978), 58 Ill. App. 3d 938, 991, 374 N.E.2d 963, *appeal denied* (1978), 71 Ill. 2d 613.) Where an admission is proffered against a defendant, it is always admissible as substantive evidence for the purpose of showing guilt. (*People v. Ellis* (1976), 41 Ill. App. 3d 377, 388, 354 N.E.2d 369.) An admission instruction cannot be given unless there is some evidence of record to support the instruction; otherwise, the jury may be confused by issues

---

[1] The jury was instructed as follows:

"You have before you evidence that the defendant made an admission of fact or facts relating to the crime charged on the Indictment. It is for you to determine whether the defendant made the admission and if so, what weight should be given to the admission. In determining weight to be given an admission, you should consider all of the circumstances under which it was made." IPI Criminal No. 3.06.

[2] Defendant also argues the statement is inadmissible, and therefore constitutes error, because the State violated the rules of discovery in not disclosing the statement in their answer. (See generally Ill. Rev. Stat. 1979, ch. 110A, pars. 412(a)(i) and 415(g).) No objection was made when witness Holmes disclosed the statement. Holmes was included in the discovery answer as a potential witness. Defendant did not request a continuance or other remedy upon disclosure of the statement at trial. No wilful violation of the discovery rule is alleged. The issue is therefore waived (see *People v. Edwards*; *People v. Marshall*), and absent prejudice to substantial rights, we do not consider it.

improperly before it. *People v. Clark* (1975), 32 Ill. App. 3d 926, 931, 337 N.E.2d 291.

■■ The statement, "I give up," is sufficient to support an inference of guilt in light of the other facts of record. Defendant apparently contends, however, that the statement was a natural, ambiguous response where one has been fired upon by a police officer. Thus, according to defendant, it is not a statement which necessarily leads to a conclusion of guilt. We reiterate: an admission need not be conclusive. Testimony at trial regarding the statement constitutes some evidence sufficient to warrant an instruction on admissions. The instruction itself permits the finder of fact to deem whether an admission was made. The fact finder then is instructed to weigh any statement which it has determined to be an admission in the context of the circumstances within which it was made. Since defendant's statement was disclosed at trial without apparent prejudice (see, *e.g., People v. Field* (1973), 13 Ill. App. 3d 74, 80, 299 N.E.2d 754, *appeal denied* (1973), 54 Ill. 2d 598), we believe the circuit court properly instructed the jury upon the evidence of record. Neither testimony about the statement nor the instruction itself deprived defendant of a fair trial.

## II

Defendant also contends he was not proved guilty of armed robbery beyond a reasonable doubt. He claims his testimony established some evidence in support of the theory of innocence by reason of compulsion.[3] (See generally Ill. Rev. Stat. 1979, ch. 38, par. 3—2; *People v. Williams* (1981), 97 Ill. App. 3d 394, 403, 422 N.E.2d 1091.) He argues the State failed to prove beyond a reasonable doubt that he was not compelled to assist FMC.

■■ The two witnesses who were present in the gas station as victims testified in a positive and consistent manner. Neither man saw FMC hold a gun at defendant at any time. Nor did they ever see a "silver gun." They testified they did not hear FMC give any orders to defendant. Their testimony does indicate that FMC and defendant acted in concert. That testimony also reveals defendant took the initiative at times. Defendant remained in the station office, with a gun, after FMC had departed. He then left the office with merchandise to attempt an escape in the car he earlier referred to as his "ride." The jury heard this evidence as well as defendant's controversion of it. The jury apparently evaluated the witnesses' credibility and rejected defendant's version. Their determination

---

[3] The statute provides:
"A person is not guilty of an offense ° ° ° by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct." Ill. Rev. Stat. 1979, ch. 38, par. 7—11.

should not be set aside unless it is palpably erroneous. Similar facts have supported rejection of the compulsion defense. (See, *e.g.*, *People v. Johnson* (1976), 42 Ill. App. 3d 194, 197, 355 N.E.2d 577, *appeal denied* (1976), 64 Ill. 2d 597.) The instant jury could have concluded upon this record (and it obviously did conclude) that beyond any reasonable doubt defendant was not compelled to participate in the robberies. We believe the record contains sufficient evidence to support such a conclusion.

### III

■■ The State's brief on appeal raises the additional contention that defendant's case should be remanded for imposition of sentence upon one of the armed robbery convictions. Defendant was convicted on two charges of armed robbery, one for each victim. The trial judge sentenced defendant to one 7-year term. Defendant argues that the imposition of another sentence upon remand would constitute additional punishment imposed as a result of the exercise of his right to appeal. In *People v. Scott* (1977), 69 Ill. 2d 85, 88-89, 370 N.E.2d 540, our supreme court interpreted the powers authorized under Supreme Court Rule 615(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)) as including the power of the reviewing court to remand a cause for imposition of a sentence where none had originally been entered. That authority does not amount to the power to increase sentence as a consequence of appeal since *no* sentence was originally entered. The circuit court in this case specifically sentenced defendant to "7 years in the penitentiary." Only one sentence upon one of two convictions was imposed. Thus, the cause must be remanded for a sentencing determination on the remaining conviction. *People v. Scott.*

In accordance with the aforestated reasons, we affirm defendant's convictions and we remand for sentencing as set forth above.

Affirmed and remanded.

HARTMAN, P. J., and STAMOS, J., concur.