THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM PEARSON, Defendant-Appellant.

First District (2nd Division)    No. 79-2106

Opinion filed December 22, 1981.

DOWNING, J., concurring in part and dissenting in part.

James J. Doherty, Public Defender, of Chicago (Thomas Finegan and Richard E. Gade, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask, and John A. Ward, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

William Pearson, defendant, appeals his conviction for murder, three counts of armed robbery, attempted armed robbery, unlawful use of weapons, and armed violence.[1] Defendant was sentenced to concurrent terms of imprisonment of 40 years for murder, 20 years for each armed robbery, 10 years for attempted armed robbery, and 5 years for unlawful

---

[1] See Ill. Rev. Stat. 1977, ch. 38, pars. 9—1, 18—2, 8—4, 24—1, and 33A—2.

use of weapons. No sentence was imposed on the armed violence conviction.

Defendant, along with a number of other persons, was drinking and gambling at an "after hours" bar located on South Loomis in Chicago. He announced a hold-up, brandished a sawed-off shotgun and pistol, and fired several shots into the ceiling. The other customers all dove for cover, and a second series of shots was heard. Defendant then fled with the money, leaving behind the fatally wounded Sammy Priest.

On appeal, defendant claims the trial court erred in (1) denying his motion for a new trial based on the failure of the State to honor defendant's request for disclosure of the arrest records of several witnesses for the State, and (2) denying his request for a one-day continuance. The State contends on appeal that the trial court erred in not imposing sentence on the armed violence conviction, and seeks a remand for the imposition of such a sentence.

# I

In its discovery motion, the defense requested any record of prior criminal convictions of the witnesses for the State. The State did not respond to this motion, as it filed its answer to discovery three weeks prior to the filing of the defense discovery motion. The State's answer tracked the standard discovery motion used by the Public Defender's office, which requests "criminal records * * * to be used for impeachment." Defendant was represented by private counsel.[2]

The State did not disclose the arrest records of five occurrence witnesses. George Webb had a 1979 felony conviction for possession of a controlled substance. Barbara Walker had an outstanding bond forfeiture warrant on a 1973 attempted theft charge. William Wilbourn and James Remmer both had misdemeanor convictions for possession of marijuana and numerous gambling and drug arrests. Ewing Johnson had a number of gambling arrests.

Supreme Court Rule 412 (73 Ill. 2d R. 412) governs disclosure to an accused in a criminal case. Rule 412(a)(vi) states that the accused is entitled to the records of any criminal convictions suitable for use in impeachment of any person the State intends to call as a witness. In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the supreme court set forth the policy with respect to the use of prior convictions for impeachment. Rule 412(c) entitles the accused to any exculpatory material. This rule is a codification of the constitutional requirement of *Brady*

---

[2] The practice of filing an answer to discovery prior to the motion for discovery should be discontinued. The problems encountered in this case might have been avoided had the State followed Supreme Court Rule 412(d) which requires the State to file its answer to discovery "as soon as practicable following the filing of a motion by defense counsel." 73 Ill. 2d R. 412(d).

*v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. Ill. Ann. Stat., ch. 110A, par. 412, Committee Comments, at 681 (Smith-Hurd 1976).

The felony conviction of George Webb for possession of a controlled substance in 1979 was the type of conviction which might have been admitted for impeachment. We do not decide that question. The conviction occurred after the State filed its answer to discovery, but before the beginning of trial. The State contends that it should not be responsible for knowing that Webb was convicted of a crime after its answer to discovery was filed. The State argues that its answer listed over 70 witnesses and that "[i]t would be an unreasonable burden to require the People to continually monitor the activities of such a large number of witnesses."

■■ Supreme Court Rules 415(b)[3] and 412(f),[4] read together, create a duty on the State to be aware of any recent convictions of its witnesses. Contrary to the State's contention, such a duty should not be excessively burdensome. While the State may have listed over 70 witnesses in its answer to discovery, it only called 13 at trial, three of whom were police officers. The State could have easily requested current Bureau of Identification sheets on the remaining witnesses. We therefore hold that it was error for the State to fail to disclose George Webb's felony conviction to the defense.

■■ The State contends that the failure to disclose Webb's felony conviction was harmless error. It is clear that this error was harmless beyond a reasonable doubt. The defendant's reply brief virtually concedes this point. Webb was only one of seven occurrence witnesses, and all testified to similar versions of the incident. His testimony was clearly cumulative. Defendant cites a number of cases for the proposition that once a discovery violation is found, a defendant need not establish prejudice in order to be entitled to a new trial. These cases deal with substantive evidence of an exculpatory nature and not with a prior conviction to be used solely for impeachment.

The State's failure to disclose the arrest record of the other four occurrence witnesses raised a different issue, since none had any provable

---

[3] Rule 415(b) states, in relevant part:

"If, subsequent to compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material ° ° °."

73 Ill. 2d R. 415(b).

[4] Rule 412(f) states:

"The State should ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged."

73 Ill. 2d R. 412(f).

felony convictions. Barbara Walker's arrest record listed an outstanding bond forfeiture warrant on a 1973 attempted theft charge, while the other three had prior gambling and narcotics arrests and misdemeanor convictions. The defendant does not argue that this material would have been admissible at trial for impeachment, but that "the investigative prospects afforded by it may well have enabled the defense to develop relationships existing between the various witnesses." The defense argues that it might have found "a real or perceived interest, motive, or bias to testify falsely."

The defense relies on *People v. Galloway* (1974), 59 Ill. 2d 158, 319 N.E.2d 498, where a conviction was reversed for failure of the State, upon specific request of the defendant, to disclose the arrest record of a key witness for the State. In Galloway, the witness was a drug addict and former prostitute who made an undercover drug buy from the defendant. *Galloway* is clearly distinguishable from the instant case. The crux of *Galloway* was the false representation by the prosecutor, coupled with the immediacy of the pending charge and its dismissal.

In the instant case, Barbara Walker's outstanding warrant was over six years old, and no allegation of favorable treatment of her has been made by defendant. No substantial basis existed for claiming the materiality of this information, especially since Walker's credibility was already damaged by her admission that she was the owner of the illegal "after hours" bar that housed a gambling operation.

■■ Similarly, no substantial basis existed for claiming the materiality of the arrest record of the other three witnesses. Nothing contained in these records would have been admissible for impeachment. The prosecution's failure to disclose these four arrest records was not error.[5]

## II

Defendant contends that the trial court erred in denying his request for a one-day continuance to secure the testimony of a physician who treated him for gunshot wounds.

It is defendant's contention that the testimony of a Dr. Pearson was material to corroborate defendant's testimony that he was shot twice during the incident. Defendant suggests this would support his theory that defendant's action constituted a justified use of force. The defense claims that it did not anticipate the need for this testimony until a police officer testified in the State's case in chief that defendant told him he had been shot once. Defendant submitted an offer of proof that the doctor would testify that defendant had been shot twice by weapons of different

---

[5] Parenthetically, there is no reason why the prosecution should not provide this information to the defendant upon specific request. Similarly, since defense counsel was able to obtain this information by subpoena for post-trial motions, he could have done so in advance of trial.

caliber. In a letter, submitted in support of defendant's motion for a new trial, the doctor stated that he was not certain that the bullets were of different caliber but that, to the best of his recollection, they were.

Our reading of the record suggests the trial court gave defendant ample opportunity to present medical testimony. On Friday, September 21, 1979, defense counsel advised the trial court of potential testimony by a Dr. Yamuth regarding alleged bullet wounds. At that time defendant's attorney indicated that on September 10 he had received certain medical reports which he had not yet read. The trial court then reviewed the report and noted it referred to a "wound." The court continued the case until Monday, September 24, to provide the defendant an opportunity to secure the presence of the doctor. On Monday morning, September 24, defendant advised the court he was waiting for a Dr. Pissard who was then in surgery and coming from Joliet. After the luncheon recess defendant's attorney requested a continuance for a Dr. Pearson, admitting that defendant had informed him of Dr. Pearson some time ago. The trial court denied the motion for a continuance. The defendant's offer of proof as to what the doctor would say was denied when defendant's counsel admitted the doctor had told him that he (the doctor) had no recollection and would have to look at the hospital record of defendant.

■■ A decision to grant or deny a continuance lies within the discretion of the trial court; it will not be disturbed absent a clear showing of abuse. The decision must be evaluated in light of the particular facts and circumstances that existed at the time. (See *People v. Jackson* (1979), 72 Ill. App. 3d 231, 236, 390 N.E.2d 47; *People v. Rivera* (1978), 64 Ill. App. 3d 49, 52, 380 N.E.2d 1018.) In light of the lack of certainty surrounding the doctor's expected testimony, the obvious lack of diligence of defense counsel in determining the identity of the treating physician, and the previous continuance granted for the same purpose by the trial court, we cannot say that the trial court abused its discretion in denying the motion for a continuance. Trial counsel have a duty to prepare cases and be ready for trial where, as here, there was adequate opportunity to prepare.

### III

■■ The State contends that the trial court erred in not imposing sentence on the armed violence conviction and seeks a remand so the trial court may impose a sentence. We clearly have the authority, upon defendant's appeal, to remand for imposition of sentence on a count on which the trial court did not impose sentence. (*People v. Scott* (1977), 69 Ill. 2d 85, 88-89, 370 N.E.2d 540; *People v. Burns* (1981), 99 Ill. App. 3d 42, 47, 424 N.E.2d 1298.) Under our recent decisions, it is proper to sentence a defendant for both armed violence and murder. (*People v. Feierabend* (1981), 98 Ill. App. 3d 731, 742, 424 N.E.2d 765; *People v. Lynom* (1981), 97 Ill. App. 3d

1113, 1122, 423 N.E.2d 1281; *People v. Best* (1981), 97 Ill. App. 3d 1083, 1087, 424 N.E.2d 29; *contra, People v. Simmons* (1981), 99 Ill. App. 3d 519, 524, 425 N.E.2d 1168.) Defendant cites the case of *People v. Burnette* (1981), 97 Ill. App. 3d 1015, 1021-22, 423 N.E.2d 1193, wherein the fourth division of this court decided this issue contrary to our decision in *Feierabend.* For the reason set forth in *Feierabend,* we do not agree with defendant.

Accordingly, the judgment of the circuit court of Cook County is affirmed, and this cause is remanded for imposition of a sentence on the armed violence count.

Affirmed and remanded.

HARTMAN, P. J., concurs.

JUSTICE DOWNING, concurring in part and dissenting in part:

I fully agree with parts I and II of the majority opinion, which affirm defendant's conviction. For the following reasons, I must dissent from part III, which remands this cause for imposition of sentence on the armed violence conviction.

Armed violence is the commission of any felony defined by Illinois law while armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) The statute first became effective in 1967. Certain amendments were added effective February 1, 1978. Since the amendments, many cases have dealt with the issue of when convictions and concurrent sentences are proper for both armed violence and the underlying felony offense upon which the armed violence conviction is predicated. Two considerations are involved in determining whether convictions are proper for both armed violence and the predicate felony: "one act, one crime" (see *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273), and "double enhancement" (see *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627).

The doctrine of "one act, one crime" provides that a defendant may not be convicted of, or be given sentences for, more than one offense unless he commits more than one physical act. This doctrine was extensively discussed by the supreme court in *People v. King,* and recently applied in *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.

The supreme court first addressed itself to the amended armed violence statute in *People v. Haron.* There it developed the doctrine of "double enhancement." Haron was charged with aggravated battery, and armed violence predicated on the underlying felony of aggravated battery. Haron had committed an offense with a deadly weapon, which allowed the charge to be enhanced from battery to aggravated battery, and which also supported the charge of armed violence. The supreme

court held this "double enhancement" to be contrary to the intent of the General Assembly, and thus affirmed the dismissal of the armed violence charge against Haron. See also *People v. Van Winkle* (1981), 88 Ill. 2d 220, 430 N.E.2d 987.

On the same day the *Haron* opinion was filed, the supreme court handed down *People v. Myers*. Myers was convicted, relevantly, of attempted murder and armed violence based upon the underlying offense of aggravated battery. (Defendant was not convicted of aggravated battery.) The relevant act involved the use of a knife in slitting the victim's throat. The evidence showed that the defendant moved the knife from the victim's neck twice while threatening the victim's companion and cutting the latter's fingernail. The supreme court applied the *King* doctrine, found each act of placing the knife against the victim's throat to be sufficient under *King* to support a conviction, and thus affirmed the concurrent sentences for attempted murder and armed violence.

Since the effective date of the amended armed violence statute, the appellate court has considered a number of cases arising from the armed violence statute. In this district of the appellate court, a variety of results has been reached. The following summary illustrates the treatment of this matter by this district.

*In the 1st Division:*

*People v. Jones* (1981), 93 Ill. App. 3d 475, 417 N.E.2d 647. Defendant was convicted of unlawful restraint, armed violence, and two counts of unlawful use of weapons. Concurrent sentences were imposed for armed violence and unlawful use of weapons. Relying on *King*, the court vacated the unlawful restraint and one unlawful use of weapons convictions, and affirmed the armed violence and the other unlawful use of weapons charges.

*People v. Mormon* (1981), 97 Ill. App. 3d 556, 422 N.E.2d 1065. Defendant was convicted of rape and armed violence. The court, relying on *King*, held the act of rape with the victim held at gunpoint is only one act. The armed violence conviction was vacated. The supreme court granted the State's petition for leave to appeal (1981), 85 Ill. 2d 572.

*In the 2d Division:*

*People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25. This consolidated case involved, in *Crawford*, convictions of armed robbery and armed violence, and in *Miller*, convictions of rape, armed robbery, and armed violence. Relying on *King*, the armed violence convictions were set aside.

*People v. Lynom* (1981), 97 Ill. App. 3d 1113, 423 N.E.2d 1281. Defendant was convicted of voluntary manslaughter and armed violence. Relying on *Haron* and *Myers*, the court discussed the issue of double

enhancement. The court found no improper double enhancement and affirmed the multiple convictions. Significantly, the "one-act, one-crime" issue was not discussed.

*People v. Best* (1981), 97 Ill. App. 3d 1083, 424 N.E.2d 29. The multiple convictions of deviate sexual assault, rape, burglary, and armed violence were affirmed. Defendant used a knife and threatened to kill if the victim did not submit. The court relied on *Lynom* and did not discuss the "one-act, one-crime" question.

*People v. Feierabend* (1981), 98 Ill. App. 3d 731, 424 N.E.2d 765. The multiple convictions of murder and armed violence based on a gunshot killing were affirmed. The court, relying on *Lynom* and *Best*, discussed the question of double enhancement. The issue of "one-act, one-crime" was not discussed.

*In the 3d Division*:

*People v. Johnson* (1981), 101 Ill. App. 3d 1060, 428 N.E.2d 1133. Defendant was convicted of murder by stabbing of the victim. He was further convicted and sentenced for armed violence. Disagreeing with the second division cases and relying on *King*, the court vacated the conviction and sentence for armed violence.

*In the 4th Division*:

*People v. Burnette* (1981), 97 Ill. App. 3d 1015, 423 N.E.2d 1193. Defendant was convicted and sentenced for murder and armed violence for a gunshot killing. Relying on *King*, the court held the victim's shooting was one act and reversed the conviction and sentence for armed violence.

*In the 5th Division*:

*People v. Jones* (1980), 89 Ill. App. 3d 1030, 412 N.E.2d 683. The defendant was convicted of armed robbery, aggravated kidnapping, and armed violence. Based on *King*, the court reversed the conviction for armed violence on the theory of "pyramiding."

*People v. Simmons* (1981), 99 Ill. App. 3d 519, 425 N.E.2d 1168, *appeal allowed* (1981), 85 Ill. 2d 581. The court held the convictions and concurrent sentences for involuntary manslaughter and armed violence resulting from a shooting death violated the principle of one act, one crime, and vacated the involuntary manslaughter conviction. The *Simmons* court acknowledged *Lynom*, but declined to follow it.

*People v. Perez* (1981), 101 Ill. App. 3d 64. Convictions an concurrent sentences for rape and armed violence were affirmed, relying on *Best*. The court dealt only with the issue of double enhancement and not with the issue of one act, one crime.

*People v. Petrovic* (1981), 102 Ill. App. 3d 282, 430 N.E.2d 6. Defendant was convicted of aggravated battery and armed violence. Based on *Haron*, the court found double enhancement in battery to

aggravated battery, then to armed violence. The latter conviction and sentence were vacated.

It is obvious the amended armed violence statute has created problems. In this district a clear-cut policy has not developed. The problems of double enhancement and "one act, one crime" have led to inconsistent results. A proper analysis of whether convictions and concurrent sentences for armed violence and the predicate felony may be imposed requires a two-step analysis. First, the court should determine if multiple convictions and sentences violate the rule against double enhancement. (*Haron.*) Second, the court should determine if multiple convictions and sentences violate the principle of "one act, one crime." *King*; *Myers*.

Turning to the instant case, defendant was convicted of murder and armed violence predicated on the underlying felony of murder, along with other crimes. The doctrine of double enhancement poses no problem. Defendant, however, committed only one act upon which the charges of murder and armed violence were based, the shooting of Sammy Priest. A series of gunshots, fired in a single burst, constitutes only one act. (*People v. Connor* (1980), 82 Ill. App. 3d 652, 660-61, 402 N.E.2d 862, *appeal denied* (1980), 81 Ill. 2d 595.) Thus, multiple convictions and concurrent sentences in the instant case violate the principle of "one act, one crime." The trial court held that a sentence on armed violence would be duplicitous and not appropriate. I agree. (See *Simmons v. United States* (1978), 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909.) I would affirm the judgment of the circuit court.