THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES STOKES, Defendant-Appellant.

Second District   No. 83—179

Opinion filed January 12, 1984.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Charles Stokes, the defendant, was convicted by a jury of forgery (Ill. Rev. Stat. 1981, ch. 38, par. 17—3) and sentenced by the court to probation for 18 months, the first six months of which to be imprisoned.

On appeal, the defendant contends that he was prejudiced by the State's failure to provide him with requested discovery material relating to the prior criminal record of a key State's witness. The defendant also claims that he was prejudiced by the alleged ineffective assistance of his trial counsel. The defendant's first claim of error is meritorious, and accordingly, we reverse and remand for a new trial.

The State's case hinged upon the testimony of two witnesses: Betty Barnes and James E. Bullard.

Barnes testified that on four occasions, the defendant came to her house with checks payable to her, and drawn on the account of "All American Publishing." The defendant asked her to cash the checks and threatened to damage her car if she did not. Four times Barnes allegedly drove the defendant to area stores or banks to cash the checks. The first three times, Barnes was successful. Barnes testified that the defendant kept the proceeds of all the checks. On her last attempt, Barnes was arrested and charged with forgery. The defendant was not found in her car when the police arrived.

Barnes' testimony was significantly impeached in several respects. Her testimony that the defendant received all of the proceeds of the first three check cashing attempts was impeached by her post-arrest statements to police that she received a total of $375 in such proceeds. It was further stipulated that from the two checks involved in Barnes' unsuccessful, fourth cashing attempt, she requested the cashier to pay her gas bill from the proceeds, and also

to issue her a money order in the amount of $150.

Barnes was temporarily disabled at the time of these incidents, and her income was limited to $25 weekly alimony, and sums earned baby sitting. She told the police that she cashed the checks because she needed money.

It was also shown that Barnes lied to police regarding how she obtained the checks. Initially, Barnes told the police that she obtained the checks while employed as a housekeeper in a Barrington residence.

On cross-examination, Barnes could not recall whether she had been offered leniency on forgery charges arising from her check cashing incidents, in exchange for her testimony against the defendant. It was stipulated that Barnes was offered probation on those pending forgery charges, in exchange for her testimony.

After the testimony of witness Barnes was concluded, the circuit court entertained an oral defense motion *in limine* to exclude testimony by James Bullard, relating to certain admissions allegedly made by the defendant in the presence of Bullard. When it became apparent that the State failed to disclose the existence of those statements in its answer to the defendant's discovery request, the circuit court granted the motion *in limine*.

James Bullard thereafter testified on behalf of the State that he observed the defendant forge seven different All American Publishing checks on seven occasions. On cross-examination, Bullard admitted his involvement in the cashing of yet another All American Publishing check. Bullard gave that check to Denise Darst, drove her to a store where she could cash it, and thereafter kept the proceeds.

Bullard admitted his involvement in the cashing of two forged checks drawn on the account of Velma Rolling, the mother of Bullard's child. It was disclosed that Rolling was the complainant in a misdemeanor battery charge brought against Bullard. The jury was apprised, over the State's objection, that Bullard was placed on supervision for that offense.

It is unclear from the record whether Bullard was charged with forgery in connection with either the All American Publishing check he gave to Darst, or for the forged Rolling checks he gave to other women. It was Bullard's understanding that no charges would be placed against him regarding those offenses. Bullard denied that the State's failure to charge him with those incidents was related to his willingness to testify against the defendant.

The defendant testified on his own behalf, denying involvement in the offense. Denise Darst testified on behalf of the defendant that

Bullard gave her an All American Publishing check, drove her to an area store, requested her to cash it, and kept the proceeds.

The jury found the defendant guilty of forgery.

The defendant raises two issues:

    1. Whether the defendant was prejudiced by the State's failure to disclose the prior criminal record of a key State's witness, thus requiring that the defendant be accorded a new trial.

    2. Whether the defendant enjoyed the effective assistance of counsel below.

■ The defendant's formal discovery request sought the disclosure, *inter alia*, of the prior criminal record of State's witness James E. Bullard. The State failed to disclose such information, and the defendant is well taken in his observation that the State's failure to comply with its continuing discovery obligation was unexcused.

Supreme Court Rule 412 (87 Ill. 2d R. 412) creates an affirmative continuing duty on the State to disclose the criminal records of its witnesses to the accused. (*People v. Pearson* (1981), 102 Ill. App. 3d 732, 735; *People v. Higgins* (1979), 71 Ill. App. 3d 912, 930.) Noncompliance with that obligation is excused only where the prosecution did not know, and could not, through the exercise of due diligence have become aware of the matter in question. *People v. Eliason* (1983), 117 Ill. App. 3d 683, 693.

Here, the prosecutor confessed that he simply did not request information relating to Bullard from either the Elgin police or other State authorities. Clearly, the prosecutor did not in good faith attempt to discharge his discovery obligation toward the defendant. This want of good faith on the part of the prosecutor is further shown by his failure to disclose to the defendant the existence of his prior statements made in the presence of Bullard; a discovery violation which was properly sanctioned by the court's grant of the defendant's motion *in limine*.

■ Having found a discovery violation on the part of the State, the inquiry must turn to whether the defendant was prejudiced by that violation. (See, *e.g., People v. Greer* (1980), 79 Ill. 2d 103, 120.) Here the defendant was prejudiced by the discovery violation, and he is entitled to a new trial.

The State's case against the defendant was premised on the testimony of two impeached witnesses, each of whom was involved in the crime. Each was accorded leniency by the State regarding their involvement in the offense, in exchange for their testimony against the defendant. Neither witness presented a particularly noble charac-

ter to the jury.

The State's witnesses, particularly James Bullard, were shown to be less than credible witnesses below. This fact forms the basis for the State's present contention that the evidence of Bullard's 1973 burglary convictions was merely cumulative evidence affecting Bullard's already impeached credibility. Of course, that evidence would be highly relevant to the subject of Bullard's credibility; although to that extent, the evidence might be deemed cumulative.

The defendant was entitled to apprise the jury of this relevant fact respecting Bullard's credibility during trial. Because the trial basically hinged on the issue of credibility, the denial of this evidence regarding the credibility of the State's witness Bullard cannot be considered harmless beyond a reasonable doubt. Therefore, we reverse and remand. Because of our disposition of the first issue, it is unnecessary to consider the issue as to whether the defendant enjoyed the effective assistance of counsel.

■ However, it is necessary to review the sufficiency of the evidence against the defendant because a failure to do so might subject him to double jeopardy upon retrial. (See *People v. Eliason* (1983), 117 Ill. App. 3d 683, 695.) We conclude that the jury's verdict finding the defendant guilty of forgery was supported by the evidence.

■ The jury, as finder of fact, could have determined that the State's witness, Betty Barnes, testified truthfully at trial, regarding the defendant's involvement in the offense. (*People v. Novotny* (1968), 41 Ill. 2d 401, 412.) The testimony of Barnes alone, if considered positive and credible, would be sufficient to support a conviction although contradicted by the defendant. *People v. Sparkman* (1979), 68 Ill. App. 3d 865, 871.

Reversed and remanded for a new trial.

HOPF and NASH, JJ., concur.