518

THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. WILLIAM PEARSON, Petitioner-Appellant.

First District (2nd Division)   No. 1—86—1748

Opinion filed September 5, 1989.

Randolph N. Stone, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Petitioner-appellant William Pearson was convicted by a jury in 1979 of murder, three counts of armed robbery, attempted armed robbery, unlawful use of weapons, and armed violence. He was sentenced to imprisonment for concurrent terms of 40 years for murder, 20 years for each armed robbery, 10 years for attempted armed robbery and 5 years for unlawful use of weapons. No sentence was entered on the armed violence conviction. He now appeals from an order of the circuit court dismissing his petition for post-conviction relief.

The issue raised on this appeal is whether the trial court properly dismissed the post-conviction petition without an evidentiary hearing, where petitioner alleged ineffective assistance of counsel based on (1) trial counsel's failure to call as a witness a physician who would have testified that on the night of the crime petitioner was struck by two bullets of different calibers, thereby corroborating petitioner's defense theory that he was the victim, rather than the perpetrator, of the crime; (2) appellate counsel's failure to raise the issue of the trial court's refusal to allow a defense witness to testify for the purpose of impeaching a State's witness with a prior inconsistent statement; and (3) appellate counsel's failure to raise the issue of systematic exclusion of blacks during jury selection.

The evidence presented at petitioner's trial established that, on December 3, 1978, petitioner had been drinking and gambling at an "after hours" bar in Chicago. Petitioner announced a hold-up, brandished a sawed-off shotgun and pistol, and fired several shots into the ceiling. The other patrons in the bar dove for cover, more shots were fired, and petitioner fled with a large sum of money. Sammy Priest was fatally wounded during the hold-up.

Petitioner denied committing the robberies. He claimed that he was robbed and shot after winning money in a dice game. Petitioner admitted that he fired some shots, but claimed that he fired in self-defense.

During the State's case in chief, Sherry McWoodson testified that

on the night of the hold-up, petitioner arrived at her home with money and guns and stated that he had shot someone and that he hoped that person was dead. Two days after her testimony, defense counsel requested leave to add Maggie Sprott to the list of defense witnesses. Defense counsel told the court that he had learned that Sprott, a friend of both petitioner and McWoodson, had a conversation with McWoodson before McWoodson testified. Defense counsel made an offer of proof that Sprott would testify that McWoodson admitted to her that petitioner never stated that he had shot someone. The trial court denied defense counsel's request to allow Sprott to testify on the ground that no foundation had been laid on cross-examination for impeaching McWoodson by confronting her with a prior contrary statement. Defense counsel did not request leave to recall McWoodson for the purpose of laying a foundation.

On Friday, September 21, 1979, after the State rested, petitioner's attorney informed the court that he intended to call a certain physician, believed to be petitioner's treating physician, to testify that petitioner had been struck twice by bullets of different calibers. Petitioner's attorney indicated that he had not anticipated the need to call petitioner's physician until after a State's witness had testified that petitioner had been shot only once. Petitioner's attorney requested a continuance to locate the doctor and his request was granted until the following Monday. On Monday morning, petitioner's attorney informed the court that he had learned that a different physician, Dr. Richard Pearson, appeared to have treated petitioner, but that Dr. Pearson needed to review his records to determine whether he had examined petitioner. Petitioner's attorney requested a one-day continuance to bring in Dr. Pearson. That request was denied.

The record reflects that petitioner's attorney had known about Dr. Pearson for some time, but never subpoenaed him or any other physician. In his motion for a new trial, petitioner submitted a letter written by Dr. Pearson, stating that Dr. Pearson had removed two bullets from petitioner that, "to the best of [Dr. Pearson's] recollection," were of different calibers.

Petitioner's appellate counsel raised two issues on appeal: first, whether the trial court erred in denying the request for a one-day continuance; and second, whether the trial court erred in denying petitioner's motion for a new trial based on the State's failure to honor his request for disclosure of arrest records of certain State witnesses. However, petitioner's convictions and sentences were affirmed. (*People v. Pearson* (1981), 102 Ill. App. 3d 732, 430 N.E.2d 304.) Significantly, the court did not find any abuse of discretion in the trial

court's denial of the motion for a continuance because of "the obvious lack of diligence of defense counsel in determining the identity of the treating physician" and the "lack of certainty surrounding [Dr. Pearson's] expected testimony." *People v. Pearson* (1981), 102 Ill. App. 3d 732, 737, 430 N.E.2d 304.

The Illinois Supreme Court denied petitioner leave to appeal. (*People v. Pearson* (1982), 91 Ill. 2d 564, 440 N.E.2d 126.) On February 17, 1984, the United States District Court denied petitioner's *pro se* habeas corpus petition. On January 21, 1985, the district court's order was affirmed on appeal.

On August 26, 1985, petitioner filed his petition in the circuit court for post-conviction relief. Petitioner alleged ineffective assistance of trial counsel based on defense counsel's failure to subpoena Dr. Pearson or take other measures to compel his attendance; to present evidence corroborating petitioner's theory that he was framed; to request a ballistics examination to determine the caliber of the bullet inside Sammy Priest's skull; to move to suppress incriminating statements elicited from petitioner in violation of his *Miranda* rights; and to request a voluntary manslaughter instruction.

Petitioner also alleged that he was denied due process of law by the trial court's denial of his motion for a continuance; the trial court's failure to take action *sua sponte* to secure Dr. Pearson's attendance; the trial court's failure to order a hearing *sua sponte* regarding petitioner's statements elicited in violation of *Miranda*; the trial court's refusal to permit Maggie Sprott to testify; the State's failure to disclose the arrest records of certain witnesses; and defense counsel's failure to request a voluntary manslaughter instruction. Petitioner alleged further that he was denied an impartial jury by the systematic exclusion of blacks during jury selection. Finally, petitioner alleged ineffective assistance of appellate counsel based on appellate counsel's failure to rise on appeal each of the above contentions.

The State filed a motion to dismiss the petition. On June 12, 1986, the State's motion was granted and the petition was dismissed without an evidentiary hearing.

I

Petitioner maintains that the ineffective assistance of counsel allegations in his post-conviction petition were sufficient to withstand a motion to dismiss and to require an evidentiary hearing. Petitioner asserts first that an evidentiary hearing was required on his claim of ineffective assistance of trial counsel because his trial counsel never called Dr. Pearson as a witness even though he had access to petition-

er's medical records and knew about Dr. Pearson prior to the trial. In support of his argument, petitioner relies on *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83. In that case, the defendant was convicted of voluntary manslaughter for killing someone in a dispute over a "crap" game. Defense counsel failed to call two witnesses who would have testified that the deceased had a gun, a reputation for violence, and had threatened the defendant. The court held that the allegations in the petition for post-conviction relief were sufficient to withstand a motion to dismiss and to require an evidentiary hearing, because the expected testimony corroborated the defendant's testimony and its cumulative effect might have resulted in a not guilty finding. Petitioner asserts that, like the expected testimony in *Stepheny*, Dr. Pearson's testimony was "crucial" to his defense, because Dr. Pearson would have testified that petitioner was shot twice by bullets of different calibers, thereby corroborating petitioner's claim that he was a victim of the robbery and fired shots only in self-defense.

■■ ■ A post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right. (*People v. Del Vecchio* (1989), 129 Ill. 2d 265, 279; *People v. James* (1986), 111 Ill. 2d 283, 291, 489 N.E.2d 1350.) An evidentiary hearing is allowed only if the petitioner makes a substantial showing of a violation of a constitutional right and the allegations are supported by the record in the case or by accompanying affidavits. (*People v. Del Vecchio*, 129 Ill. 2d at 279; *People v. Silagy* (1987), 116 Ill. 2d 357, 365, 507 N.E.2d 830.) Generally, the issue of a trial counsel's competence is waived where the defendant's appellate counsel fails to raise the issue on direct appeal. (*People v. Owens* (1989), 129 Ill. 2d 303, 308.) However, the waiver rule is relaxed where the facts relating to the issue of incompetency do not appear on the face of the record (*People v. Owens*, 129 Ill. 2d at 308), or where fundamental fairness so requires (*People v. Del Vecchio*, 129 Ill. 2d at 280; *People v. Burns* (1979), 75 Ill. 2d 282, 388 N.E.2d 394).

■■ In this case, petitioner was represented by appellate counsel different from trial counsel (see *People v. Ford* (1981), 99 Ill. App. 3d 973, 426 N.E.2d 340), and the facts relating to petitioner's claim of incompetency were contained in the record. Accordingly, petitioner has waived the issue of ineffective assistance of trial counsel by not raising it on direct appeal.

■■ Fundamental fairness does not require relaxation of the waiver rule in this case, because the record does not support petitioner's claim of ineffective assistance of trial counsel in violation of the

sixth amendment. To prevail on such a claim, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) A claim of ineffective assistance of counsel may be disposed of on the ground of lack of sufficient prejudice without considering whether counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Albanese*, 104 Ill. 2d at 527, 473 N.E.2d 1246.

■ In this case, the record does not support petitioner's contention that his trial counsel's conduct was deficient. Unlike trial counsel's alleged conduct in *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83, relied on by petitioner, trial counsel in this case plainly made efforts to procure Dr. Pearson as a witness. Indeed, in arguing on direct appeal that the trial court erred in denying his motion for a one-day continuance, petitioner urged, contrary to his position here, that his trial counsel was diligent in his efforts to procure Dr. Pearson as a witness.

■ The record also does not support petitioner's contention that he was prejudiced by his trial counsel's failure to call Dr. Pearson as a witness. Had Dr. Pearson been called as a witness, he would have testified that petitioner was struck by two bullets of different calibers. Petitioner claims that this testimony would have corroborated his theory at trial that he was winning at gambling and fired shots in self-defense only after he was robbed and shot at by another disgruntled gambler.

However, the testimony that petitioner had been shot twice would have been cumulative, because one of the State's witnesses had already testified that petitioner was in the hospital for a gunshot wound and petitioner himself testified that he had been shot twice. Moreover, the expected testimony regarding the calibers of the bullets was uncertain, because Dr. Pearson indicated that he was not sure if the bullets were of different calibers and the medical records submitted by petitioner in support of his motion for a new trial do not indicate that the bullets were of different calibers. Finally, four State witnesses testified that petitioner, without provocation, announced a hold-up, brandished two guns, fired shots and fled with the money. Unlike the expected testimony of the witnesses in *Stepheny*, Dr. Pearson's testimony would not have contradicted that other evidence of petitioner's guilt. Given the evidence presented at trial that petitioner was

shot, the uncertain nature of the testimony regarding the calibers of the bullets, and the overwhelming evidence of petitioner's guilt, it is not likely that Dr. Pearson's testimony would have changed the outcome of the trial.

## II

Petitioner maintains next that an evidentiary hearing was required on his claim of ineffective assistance of appellate counsel based on appellate counsel's failure to raise the issue of the trial court's refusal to allow Maggie Sprott to testify that Sherry McWoodson had perjured herself. Petitioner argues that Sprott should have been allowed to testify despite defense counsel's failure to confront McWoodson with her prior contrary statements, because defense counsel learned of the prior contrary statements after McWoodson testified. Petitioner maintains that his case was devastated by McWoodson's testimony, so that he was substantially prejudiced by his inability to impeach McWoodson with Sprott's testimony.

Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence to refrain from raising an issue counsel believes to be without merit unless counsel's appraisal of the merits is clearly wrong. (*People v. Frank* (1971), 48 Ill. 2d 500, 505, 272 N.E.2d 25.) In order to support a claim of ineffective assistance of appellate counsel in a post-conviction proceeding, the petitioner must establish substantial prejudice which likely affected the outcome of the case. *People v. Adams* (1987), 164 Ill. App. 3d 742, 747, 518 N.E.2d 266.

In this case, appellate counsel was not clearly wrong in his appraisal of the merits of the issue regarding the trial court's preclusion of Sprott's testimony. Generally, a proper foundation must be laid before prior inconsistent statements of a witness can be offered for purposes of impeachment. (*People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409; *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 423 N.E.2d 1185.) The purpose of this rule is to protect the witness against unfair surprise and to provide an opportunity for the witness to correct, explain, or deny the statement. (*People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876.) Where a proper foundation was not laid originally because counsel was not then aware of the prior inconsistent statement, it is within the discretion of the trial court to permit the witness to be recalled for the purpose of perfecting the foundation. (*People v. Henry* (1970), 47 Ill. 2d 312, 322, 265 N.E.2d 876.) Failure to permit the witness to be recalled may constitute reversible error. *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 423 N.E.2d 1185.

██ Trial counsel in this case was not aware of McWoodson's prior inconsistent statement until after McWoodson testified. However, trial counsel did not request leave to recall McWoodson in order to lay a foundation for impeachment. Accordingly, the court properly precluded Sprott's testimony regarding McWoodson's prior inconsistent statement on the ground that no foundation had been laid. In any event, the overwhelming evidence of petitioner's guilt suggest that any error in the trial court's ruling regarding Sprott's testimony would have been harmless. (See *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 89 L. Ed. 2d 674, 106 S. Ct. 1431.) Thus, petitioner was not substantially prejudiced by appellate counsel's failure to raise the issue on direct appeal.

## III

Finally, petitioner maintains that an evidentiary hearing was required on his claim of ineffective assistance of appellate counsel based on appellate counsel's failure to raise the issue of systematic exclusion of blacks during jury selection. Petitioner argues that, even though *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, was controlling during the pendency of his appeal, appellate counsel should have urged the appellate court to follow cases such as *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890, or to apply the sixth amendment fair–cross-section requirement to petit juries.

██ We hold that appellate counsel appropriately refrained from raising the issue of systematic exclusion of blacks during jury selection. During the pendency of petitioner's direct appeal, *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, had not been decided and the *Swain* standard controlled over fourteenth amendment claims of exclusion of blacks during jury selection. During *voir dire* in petitioner's case, the State excused 10 blacks, leaving only one black juror. Defense counsel moved for a mistrial, alleging systematic exclusion of blacks. The trial court denied the motion, stating that it could not find "an intentional exclusion of persons as a pattern, because there [had] been some blacks accepted by the State and one black excluded by the defense." Given this record and the heavy burden of proof under the standard set forth in *Swain*, appellate counsel appropriately concluded that petitioner would not prevail on a fourteenth amendment claim of systematic exclusion of blacks during jury selection.

██ Appellate counsel also appropriately refrained from raising the issue as a sixth amendment claim. In *People v. Payne* (1983), 99

Ill. 2d 135, 457 N.E.2d 1202, and *People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220, the Illinois Supreme Court declined to extend the sixth amendment fair–cross-section requirement, enunciated in *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, to petit juries. We do not believe appellate counsel was patently wrong in failing to raise a claim that would have ultimately been rejected by the Illinois Supreme Court.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.