THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTONIO PEREZ, Defendant-Appellant.

First District (5th Division)    No. 79-2493

Opinion filed October 9, 1981.

George P. Lynch, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask, and Paula Carstensen, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of rape and armed violence and sentenced to extended concurrent terms of 60 years on both counts. On appeal, it is contended that (1) he was denied the effective assistance of counsel, his right to confront witnesses, and to a trial free from hearsay evidence; (2) his age was not proved beyond a reasonable doubt; (3) the court erred (a) in allowing the State to introduce a statement made by defendant at the time of his arrest, (b) in failing to properly instruct the jury, and (c) in sentencing him to extended terms.

The record discloses that on the date set for trial, a motion of defense counsel to withdraw because his fee was not paid was denied, and he then moved *in limine* to preclude the testimony of a witness and the use of oral admissions made by defendant at the time of his arrest. After the State responded that the witness would not be called and that one of the statements would not be used, the court ruled that a statement concerning the location of defendant's gun would be admitted "if properly testified to."

The complaining witness, a 16-year-old student living at home with her family, testified that she had finished jogging at about 8:15 a.m. in a park near her home when she noticed a man wearing blue jeans and a blue jacket approaching. She then saw him put a T-shirt mask over his face and, when he came close to her, he produced a gun and pulled her into a gangway where he asked whether she was a virgin. She answered that she was, and then he said he was going to have sex with her. When she resisted, he pointed the gun at her, threw her to the ground, and pulled her shorts down. She was screaming and crying for help, but he forcibly inserted his penis into her vagina while covering her mouth with his hand at times. While he was on top of her with the gun pointed at her head for

about 10 minutes, she saw his face three times when the mask was blown away. On each of the first two occasions, she saw his face for 2 to 3 seconds and on the third for about 5 seconds. After defendant left the gangway, she dressed and ran toward the street where she saw a police officer in a squad car. She gave a description of her assailant to the officer, following which she was taken to a hospital where she was examined. The police then brought her to a police station where, from a lineup, she identified defendant as her attacker.

Officer Kappel testified that at approximately 8:30 on the morning in question, he was on patrol in his squad car when he received a simulcast of a rape in progress and, upon arriving at the scene a few minutes later, he saw a young female standing on the curb who was crying and appeared to be very upset. She told him that she had been raped and, in response to his request, she described her assailant as a male Latin, 25 years old, heavyset, about 185 to 190 pounds, approximately 5'8" in height, short dark hair with a thin mustache and a goatee. She also said that he was carrying a handgun and was wearing a blue jacket and blue jeans. He immediately put the description of the man on the air and searched the area with the victim for about 10 minutes before driving her to the hospital.

Officer Shadder testified that he was on patrol when a simulcast came over the air "of a girl screaming for help at 2701 South Tripp." When he arrived there, Officer Kappel was escorting a young girl to his car and, after she described her assailant, he and other officers began to search the area. About 25 minutes later, he observed a man with a mustache and goatee, who was wearing blue jean pants and a blue nylon windbreaker, running in front of his car. He announced on his police radio that he had a suspect and, after following the man in his squad car, he chased him on foot through gangways and eventually caught him.

Officer Whalen testified that he arrived at the scene as Officer Shadder was chasing defendant, and he followed them on foot until Shadder caught him. After defendant was informed of his rights, he asked where the gun was and defendant answered, "It is back there. I will show you where it is at." Defendant then led them to a backyard where they found a gun in the grass.

Assistant State's Attorney Frost testified that he conducted a six-man lineup at the station and that as soon as the victim viewed the lineup she pointed to defendant and stated, "That is the man."

Evidence technician John Butler testified that he examined the gun and bullets but was unable to lift any prints. Michael Zefeldt, a microanalyst, testified that he examined smears taken from the victim and observed the presence of semen, that he found human blood on her

cutoffs and underwear and also on the front of defendant's shirt and blue jeans, but that he had not determined blood-types while analyzing the clothing samples. A doctor who had examined the complaining witness at the hospital testified that her vagina had been lacerated and that pap smears were taken and sent to the laboratory.

After the State rested its case, a defense motion for a directed verdict was denied and the defense called as its sole witness defendant's sister, who testified only to defendant's addresses and appearance at the time of and prior to the occurrence in question.

After defendant was found guilty, a motion for new trial was made which, among other things, stated that defendant's counsel had been out-of-town and had not seen a copy of the laboratory report regarding blood stains on the victim's and defendant's clothing and thus did not know prior to trial that the blood stains on defendant's clothing were suitable for blood-type comparison and, because the State did not conduct blood-type comparison tests which may have established defendant's innocence, he asked for a new trial. The State, in response, stated that a copy of the lab report had been personally delivered to counsel's office 4 to 5 days before trial, that defense counsel had an opportunity to request additional blood tests during trial but did not, and further that the other evidence proved defendant guilty beyond a reasonable doubt.

After the motion for new trial was denied, a hearing on aggravation and mitigation was held during which the court was informed that defendant was convicted in 1968 of rape and aggravated battery and released on December 17, 1971. On that basis and because of the circumstances surrounding defendant's conduct in the instant crime, the State asked for an extended sentence. The State called two witnesses in aggravation, one of whom testified that she had been raped by defendant in 1977 and the other that she had been sexually assaulted by defendant in 1974. Applying the extended-term statute, the court sentenced defendant to concurrent terms of 60 years for rape and armed violence.

OPINION

Defendant first contends that he was denied effective assistance of counsel. In support of his position, defendant says that his trial attorney never interviewed him before trial as to possible defenses, had not seen discovery materials transmitted to his office by the State until the day before trial, made no pretrial discovery motions, did not move to quash his arrest, made no motions to suppress statements, identification or the lineup, made no opening statement, failed to object to hearsay evidence, failed to present jury instructions, allowed improper instructions, and failed to request blood-type tests from defendant and the victim.

In response, the State argues that those allegations are unsupported by the record and, in any event, that many of the trial attorney's decisions were tactical, matters of trial strategy, and based on hindsight evaluations.

It is clear that there is no simple formula or set of guidelines to aid in the consideration of the competency of counsel, but it has been held that such determination must include an examination of the totality of trial counsel's conduct at trial (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Smith* (1980), 81 Ill. App. 3d 764, 401 N.E.2d 1017), and that each case must be judged on the basis of its own facts in the context of the proceeding in question (*People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810). It has also been held that a review of competency of counsel "does not extend into areas involving the exercise of judgment, discretion or trial tactics by counsel, even though appellate counsel and the reviewing court might have acted in a different manner." *People v. Smith* (1980), 81 Ill. App. 3d 764, 773, 401 N.E.2d 1017, 1023.

The cases have applied a standard in determining the competency of privately retained counsel different from that applied to those who are court-appointed. In *People v. Murphy* (1978), 72 Ill. 2d 421, 436, 381 N.E.2d 677, 685, the court stated the following as to privately retained counsel:

" 'In such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham.' *People v. Torres* (1973), 54 Ill. 2d 384, 391. See also, e.g., *People v. Redmond* (1972), 50 Ill. 2d 313, 315; *People v. Washington* (1968), 41 Ill. 2d 16, 22."

On the other hand, in *People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810, the court articulated a two-prong standard for establishing whether defendants have been denied effective assistance of counsel who are court-appointed, stating that defendant must show that the trial attorney was incompetent in the manner he carried out his duties and that he was prejudiced in that the outcome would probably have been different.

There is some question in the present case as to whether trial counsel was retained or court-appointed. The record discloses that he was originally retained by defendant, but on the trial date he made a motion for leave to withdraw because defendant was unable to pay his fees. In denying the motion, the court stated that the trial would proceed and that the court would provide fees if it was established that defendant was indigent, but the record discloses no formal order of appointment.

■■ Nevertheless, it is our belief that defendant was not denied the effective assistance of counsel under either the *Murphy* or *Morris* standards. The record discloses that defense counsel interviewed defendant for four hours while he was in jail prior to trial; that he used discovered materials

at trial in his defense; and that he made a pretrial motion to suppress oral admissions made by defendant and to preclude a witness from testifying. It also appears that counsel conducted himself in a professional manner in objecting to evidence, in cross-examining witnesses, in the discussions concerning jury instructions, in his closing argument, and that timely motions for a directed verdict and for a new trial were made. We note also that some of the allegations of defense counsel's incompetence involve errors of judgment or are conjectural. Present counsel's argument that a blood-test might have excluded defendant as a suspect is merely speculative, and indeed it might instead have supported the State's case. Furthermore, there is no basis in the record to suggest that defendant's arrest lacked probable cause or that the lineup was in any way suggestive. Thus, we cannot say that the totality of the trial counsel's conduct demonstrates that the court proceedings were reduced to a sham or that defense counsel carried out his duties in such a manner that defendant was prejudiced to the extent that the outcome of the. trial would have been different.

Defendant next contends that his age was. not proved beyond a reasonable doubt. During oral argument, however, counsel for defendant agreed that this question was no longer at issue since the record disclosed a stipulation at trial that defendant was 33 years old.

Defendant also posits that his constitutional rights to confront witnesses and to a trial free from hearsay evidence were violated. He first alleges that the court improperly admitted statements made by the victim to a police officer immediately after she was raped. In this regard, it appears that Officer Kappel arrived at the scene approximately three minutes after he heard a radio communication that a rape was in progress. He testified that he saw the victim standing on the corner crying and appearing to be very upset; that she said she had been raped and he then obtained a description of the offender; and that after 10 minutes of driving around, she was so distraught that he brought her to the hospital.

■■ No objection was made by defendant at trial as to the officer's testimony concerning the victim's description of her assailant, nor was the issue specifically raised in defendant's written motion for a new trial. It is well established that the failure to make timely objections to the admission of evidence at trial will waive the issue on appeal (*People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817), and that generally the failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue which cannot be asserted as a ground for reversal on appeal (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856). Moreover, we do not find pursuant to Supreme Court Rule 615(a) that defendant's contention constitutes plain error, justifying reversal of the jury verdict. Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).

The facts in this case clearly show that the officer's statements were admissible under what the courts have recognized as the spontaneous declaration exception to the hearsay rule which permits hearsay testimony where three elements are present:

> "(1) [A]n occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (6 Wigmore, Evidence, 3d ed. sec. 1950; Cleary, Handbook of Illinois Evidence, sec. 13.28.)" *(People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.)

The record here shows sufficient spontaneity in the victim's statements and inadequate time to fabricate. Only about five minutes had passed from the time the assailant left the scene of the rape to the time she first described her assailant to the police. Additionally, there appears to be no question that the statement related to the occurrence and was made while the victim was extremely distraught and upset.

Defendant also argues that the court improperly allowed the State to use out-of-court declarations to bolster similar statements made in court. Defense counsel had impeached the victim concerning the period of time during which she had seen defendant's face on the first two occasions that his mask blew off by using a transcript from an earlier hearing. On redirect, the court allowed the State to utilize testimony from the same transcript for the purpose of showing the length of time defendant's face was exposed on the third instance that the mask blew off his face.

■■ We believe the statement was properly admitted for the purpose of clarifying the victim's earlier statement. The Illinois rule on permissible rehabilitation is explained in *People v. Hicks* (1963), 28 Ill. 2d 457, 463, 192 N.E.2d 891, 894, as follows:

> "[I]t is well settled that where a witness has been impeached by proof that he has made prior inconsistent statements, he may bring out all of the prior statements to qualify or explain the inconsistency and rehabilitate the witness."

We conclude that the statement on redirect falls within the ambit of the Illinois rule. Since defendant used only an isolated portion of the prior transcript to impeach the victim as to the first two occasions she saw defendant's face, it is proper to admit her earlier statement concerning the third instance she saw defendant's face.

We turn then to defendant's contention that he was denied a fair trial because the court allowed in evidence a statement attributed to defendant by police officers concerning the location of his gun. He argues that the statement had not been properly disclosed in contravention to the disclosure requirement of Supreme Court Rule 412(a)(ii). Although the

State's answer to discovery stated that there were no oral statements made by defendant "known at this time," the answer went on to state, "For substance of oral statements and witnesses to statement, see Police Report * * *." The record indicates that at the time the State filed its answer to discovery, it tendered to defense counsel the police report which read, "upon effecting the arrest in form [sic] by suspect that he had thrown away a gun while being persuaded [sic] by police and attributed [sic] arresting officers of its whereabouts." Prior to trial, defendant made a motion *in limine* to suppress the statement, which was denied.

At trial, Officer Whalen testified that he inquired about the gun after defendant was informed of his *Miranda* rights and that defendant replied, "It is back there. I will show you where it is at," and he then directed officers to a backyard where they found a revolver lying in the grass.

Defendant relies on *People v. McInnis* (1980), 88 Ill. App. 3d 555, 411 N.E.2d 26, to support his position. There, in an answer to discovery, the State responded that the defendant had made oral statements and referred to a police report which said, " 'in summary * * * he has known Deola Johnson for some time from the area of east 53rd Street but he denied any knowledge of the crime in question.' " (*McInnis*, 88 Ill. App. 3d 555, 567, 411 N.E.2d 26, 35.) A police officer testified that defendant told him that during the hours in which the crime occurred, he was at Michael Reese Hospital with a broken jaw and that he denied having been with Johnson. It was held that the State had not substantially complied with Rule 412 in failing to disclose that defendant had provided details of an alibi and thus had not met its statutory obligation to disclose the substance of oral statements made by the defendant.

We believe that *McInnis* is distinguished from the instant case in that the State here disclosed defendant's statements to defense counsel with sufficient specificity in that the police report stated that defendant told the officer he had thrown away a gun and then directed them to it.

■■ Moreover, the purpose of Rule 412(a)(ii) is to give defense counsel an opportunity to investigate the circumstances surrounding a statement and to protect a defendant from surprise and inadequate preparation. (*People v. Young* (1978), 59 Ill. App. 3d 254, 375 N.E.2d 442.) In the case at hand, the trial judge in denying defendant's motion *in limine* to exclude the statement, assured defendant that the trial would be delayed if necessary in order to allow defense counsel to speak with the witness who was to testify as to defendant's statement. Under these circumstances, we cannot say that defendant has been denied a fair trial.

Defendant also contends that the court failed to properly instruct the jury. He argues (1) that the definition and issues instructions as to armed violence "failed to define 'dangerous weapon' and further, failed to define

and to indicate whether rape was or was not a felony"; and (2) that the issues instruction improperly substituted the word "gun" for "dangerous weapon."

The definition instruction was as follows:

"A person commits the crime of armed violence when, while armed with a dangerous weapon, he commits the offense of rape."

The issues instruction stated:

"To sustain the charge of armed violence, the State must prove the following propositions:

*First*: That the defendant committed the offense of rape;

*Second*: That the defendant was armed with a gun.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

■■ Initially, we note that defendant's failure to object to those instructions was a waiver of their alleged defects. (*People v. McNeal* (1980), 88 Ill. App. 3d 20, 410 N.E.2d 480; *People v. Van Winkle* (1980), 86 Ill. App. 3d 289, 408 N.E.2d 29.) While Supreme Court Rule 451(c) provides that in criminal cases "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." (58 Ill. 2d R. 451(c).) It was explained in *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, that this is a "limited" exception used to remedy "grave errors" or used where a case is close factually and the fundamenal fairness of the trial is in question.

It is our view, however, that the instant case was not close factually and, even assuming the alleged defects in the instructions, we do not believe they were such as to constitute grave error. In *Van Winkle*, an instruction required proof that defendant was armed with a "dangerous weapon." In response to defendant's allegation that it was error not to have given the jury an opportunity to determine the category of weapon involved, the court stated:

"The only weapon of which any evidence was presented was a pistol, a category I weapon. In view of the verdict, it is apparent that the jury found that defendant was armed with a pistol. * * * Moreover, such error is clearly not a substantial defect cognizable under Supreme Court Rule 451(c). (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c))." (*People v. Van Winkle* (1980), 86 Ill. App. 3d 289, 294, 408 N.E.2d 29, 33.)

Similarly, in the present case, failure to define dangerous weapon was not a substantial defect. There was no apparent confusion between the instruction and the evidence presented at trial, since the only weapon involved in this case was a handgun and the State's issues instruction on armed violence specifically clarified the term by interchanging the words "dangerous weapon" with the word "gun." Furthermore, we do not see how the failure to define "felony" or to inform the jury that rape was a felony would have been beneficial to the jury or that this information, if given, would have altered the verdict—particularly in view of the fact that the issues instruction told the jury it must find "that defendant committed the offense of rape," which was defined in other instructions.

Defendant's final contention is that the trial court improperly sentenced him to an extended term under section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2), which provides that the court may impose an extended term where either of the following aggravated factors are present:

"(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody * * *; or

(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b).

We initially note that either or both of those factors will support the imposition of an extended term. (*People v. Gum* (1980), 85 Ill. App. 3d 298, 407 N.E.2d 806; *People v. Peddicord* (1980), 85 Ill. App. 3d 414, 407 N.E.2d 89.) It is defendant's position that the factors must be supported by proof beyond a reasonable doubt. Specifically, he asserts as to factor (1) that the State introduced a certified copy of the conviction of Antonio Perez, but that nowhere on it was the name of Anthony Perez. Relying solely on *People v. Langdon* (1979), 73 Ill. App. 3d 881, 392 N.E.2d 142, he argues that the prior conviction of defendant here was not established beyond a reasonable doubt. In *Langdon*, defendant was convicted of the offense of the unlawful use of a weapon within five years from his release from the penitentiary. It was held that a prior conviction within five years was an essential element of the offense and, as such, must be established beyond a reasonable doubt. However, while a fact essential to the grade or degree of the offense, as in *Langdon*, is in effect an element of the offense and must be pleaded and proved at trial, the factors to be considered when imposing sentence under the extended-term provision are not essential to the grade or degree of the offense and need not be

pleaded or proved. *Peddicord; People v. Harris* (1980), 83 Ill. App. 3d 1123, 404 N.E.2d 1020; *People v. Hairston* (1980), 86 Ill. App. 3d 295, 408 N.E.2d 382.

*Estelle v. Smith* (1981), __ U.S. __, 68 L. Ed. 2d 359, 101 S. Ct. 1866, cited by defendant in his reply brief, is factually and procedurally different from the instant case. Involved there was a murder trial in Texas, where after conviction the State sought the death sentence. Capital cases in Texas required bifurcated proceedings for the guilt and penalty stages and, at the penalty hearing, the jury was required by statute to resolve three critical issues in determining whether the death sentence would be imposed. At this hearing, a physician who had examined defendant to determine his competency to stand trial was permitted to testify concerning one of the three critical issues—future dangerousness of defendant. The supreme court held that the use of the doctor's testimony when defendant had not been told of his right to remain silent and that his statements to the doctor could be used against him, were in violation of his fifth amendment privilege. The court also found a violation of the sixth amendment, because the psychiatrist's interview was a "critical stage" of the proceedings against defendant and his defense counsel "were not notified in advance that the psychiatrist's examination would encompass the issue of their client's future dangerousness."

██ No question as to fundamental constitutional guarantees is raised by defendant with respect to the sentencing hearing in the instant case and, in view of the fact that the aggravating factors in the extended term statute are not essential elements of any crime, we find that they need not be established beyond a reasonable doubt, and we therefore reject the contention of defendant in that regard. Because the extended term may be imposed whether either one of the two aggravating factors is present, it will be unnecessary to address defendant's contentions as to alleged error in sentencing under the second factor.

██ Defendant also argues that multiple convictions for the offenses of rape and armed violence were improper because they arose from the same conduct. We note, however, that in *People v. Best* (1981), 97 Ill. App. 3d 1083, 424 N.E.2d 29, multiple convictions for rape and armed violence and the sentences thereon were held to be proper. There, defendant used a 5-inch blade knife in committing the rape, and defendant argued that his conviction for rape should have been vacated because it was the underlying offense for the armed violence conviction. The court, in holding to the contrary, quoted from *People v. Lynom* (1981), 97 Ill. App. 3d 1113, 423 N.E.2d 1281, as follows:

> " 'If the predicate offense is a felony by statutory definition when committed *without* possession or use of a dangerous weapon, such an offense may support a second charge, armed violence, when

committed *with* possession or use of such a weapon.' " (*Best*, 97 Ill. App. 3d 1083, 1087, 424 N.E.2d 29, 32.)

Guided by this reasoning, we find that the convictions for both rape and armed violence in the instant case were proper.

For the reasons stated, we find no abuse of discretion. The judgment appealed from is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.