THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD REYNOLDS, Defendant-Appellant.

Second District   Nos. 81—817, 82—86, 82—87 cons.

Opinion filed July 15, 1983.

G. Joseph Weller, Michael F. Braun, and Kyle Wesendorf, all of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Pre-

iner, Assistant State's Attorney, and Phyllis J. Perko, Raymond Beck, and Martin P. Moltz, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Upon his plea of guilty, defendant was convicted of armed robbery of the "Long John Silver" restaurant in Westmont, Illinois, on October 3, 1980. In this connection, the State nolle-prossed an additional count of armed robbery, a count charging criminal damage to property and two counts of armed violence all arising from the same incident. (No. 82—86.) Defendant had previously been convicted, following a jury trial, of one count of armed robbery and one count of armed violence arising from a September 9, 1980, incident at the "Pizza Hut" in Lisle. (No. 82—87.) In a joint sentencing hearing, defendant was sentenced to concurrent 60-year terms of imprisonment on the convictions. In addition, defendant was convicted after a jury trial of two counts of armed robbery and two counts of armed violence in connection with the robbery of the "Burger King" restaurant in Lombard, on September 10, 1980, and received concurrent sentences of 25 years' imprisonment on each count. We have consolidated the appeals for opinion.

No. 82—86

1

■■ As to the plea involving the October 3, 1980, armed robbery at the Long John Silver restaurant, defendant contends that he is entitled to a new sentencing hearing because the trial court in imposing sentence considered two prior convictions which have been reversed on appeal as aggravating factors. In support of his position, he asserts that one of the convictions listed in the presentence report was reversed in *People v. Reynolds* (1981), 96 Ill. App. 3d 79. This conviction, however, did not appear in the presentence report and the trial court could not have considered it. The other conviction, however, was for escape and did appear in the presentence report. This conviction was vacated in a Rule 23 order on the basis that escape was a lesser-included offense of armed robbery, of which the defendant had also been convicted. (*People v. Reynolds* (1982), 106 Ill. App. 3d 1160 (Rule 23 order).) The escape conviction was discussed by the prosecutor during the sentencing hearing in the present case. The trial court noted that it had considered all of the items in the presentence report, including the defendant's prior convictions. There is nothing in the re-

cord to indicate that the trial court, at the time of sentencing, knew that the escape conviction was a lesser-included offense of the armed robbery conviction.

Although we conclude that the sentence imposed was otherwise warranted in the light of the defendant's criminal background, we hold that the defendant's sentence must be vacated and this cause remanded for resentencing because the trial court considered, in fixing the extended-term sentence, the escape conviction which was later reversed. *People v. Buckley* (1977), 44 Ill. App. 3d 1038, 1039.

In *Buckley*, the conviction of another crime considered in sentencing was later reversed and the cause remanded for a new trial. In support of the result we cited *United States v. Tucker* (1972), 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589. In *Tucker*, the United States Supreme Court reversed and remanded because two of the convictions considered were unconstitutional for an improper failure to provide counsel to the defendant. The court posed as the issue whether the sentence in the case before the Federal District Court would have been different if the sentencing judge had known that the previous convictions had been unconstitutionally obtained. (404 U.S. 443, 448, 30 L. Ed. 2d 592, 597, 92 S. Ct. 589, 592.) While it is not clearly evident to us from the record that the trial court would have imposed a different punishment if he had known of the fact that one of the convictions indicated in the presentence report was, in fact, a lesser-included offense of another, we yet conclude that justice would be best served by vacating the defendant's sentence and remanding the cause for resentencing. In so doing we are not to be understood as creating a *per se* rule for vacation and remandment where the less than a constitutional question is involved, nor should the trial court on remandment construe our opinion as a mandate that upon resentencing a lesser sentence should be imposed. Rather, the sentencing judge should consider the matter anew without relying on the escape conviction. *People v. Morton* (1981), 102 Ill. App. 3d 280, 282.

## 2

Defendant also argues that his 60-year extended-term sentence must be vacated because the trial court made no finding that the defendant's conduct in this cause "was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).

Section 5—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)) provides in substance that an extended term may be imposed either where defendant is convicted of

any felony after having been previously convicted in Illinois of the same or greater class of felony within 10 years, or if the defendant's criminal conduct is accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty."

■ Defendant has waived any argument that the extended-term sentence was improper because the trial court did not state its reasons for the sentence on the record, as he failed to request a statement of reasons either at the sentencing hearing or in his post-trial motion. (See *People v. Davis* (1982), 93 Ill. 2d 155, 162-63.) Moreover, the fact that the trial court did not expressly find or otherwise set forth in the record which of the two alternate statutory factors it relied upon in imposing the extended-term sentence does not support defendant's position. The trial judge stated that the extended-term statute applied and that he was taking into account in that regard, among other things, the defendant's prior convictions. The requirement that the trial court set forth the reasons for a sentence in the record (Ill. Rev. Stat. 1981, ch. 38, par. 1005—4—1(c); *People v. Krug* (1981), 97 Ill. App. 3d 938, 941) does not obligate the court to recite and assign a value to each fact presented at the sentencing hearing. *People v. Lucien* (1982), 109 Ill. App. 3d 412, 420.

Since we have previously concluded that the matter must be reheard by the court in a new sentencing hearing we will, however, state our conclusions that it was improper for the trial judge to consider criminal behavior directed against a victim in a case unrelated to the one now before the court and it would have been further erroneous to conclude that defendant's conduct in the present case was accompanied by the exceptionally brutal or heinous behavior indicative of wanton cruelty. It would seem that any armed robbery, either expressly or impliedly, carries with it a threat that a weapon will be used if the victim does not comply with the demands of the robber. This factor does not necessarily support a finding that the behavior is exceptionally brutal or heinous. The record in this case established only that the defendant committed an armed robbery with the use of a hand gun and that he put the gun to the head of the victim and asked her where the restaurant's money was located. There is no evidence in the record that the defendant inflicted either physical injury or emotional or mental trauma on the employees in the record.

We do not find that exceptionally brutal or heinous behavior indicative of wanton cruelty was present here. See, *e.g., People v. Fieberg* (1982), 108 Ill. App. 3d 665, 669-71; *People v. Lieberman* (1982), 107 Ill. App. 3d 949, 959.

This is not to say that on remand the trial court may not consider

that the extended-term sentence was warranted under the provisions of section 5—5—3.2(b)(2). A few months prior to being convicted of the present armed robbery, the defendant was convicted of and sentenced on two counts of armed robbery and a charge of armed violence; a month before his conviction in this case he was again convicted of three counts of armed robbery and sentenced on those charges. The convictions occurred in Illinois, the sentences had already been imposed on them at the time the defendant was sentenced in the present case, and there was no evidence that the convictions had been reversed or that the sentences had been vacated.

No. 82—87

1

■ Defendant appeals the concurrent extended-term sentences imposed on the convictions based on the jury verdict on the charge arising from the September 9, 1980, incident at the "Pizza Hut" in Lisle.

In this appeal defendant argues that his convictions for armed violence must be vacated because they arose from the same act, the taking of property from the victim by threatening the imminent use of force and while armed with a pistol. The State concedes, and we agree. *People v. Donaldson* (1982), 91 Ill. 2d 164, 170.

The sentencing issues relied upon by defendant in the appeal in No. 82—87 also include the claim that the court relied upon the previous convictions for armed violence to which we have just alluded, a subsequently vacated conviction for escape to which we have also previously alluded and a conviction for armed robbery which was subsequently reversed. See *People v. Reynolds* (1982), 105 Ill. App. 3d 698.

The three previously reversed convictions, all arising from a Peoria County incident, were for armed robbery, armed violence and the escape referred to in our consideration of No. 82—66.

The trial court did not specifically refer to the convictions which have been vacated and reversed but stated that he took into account all of the prior convictions. We cannot agree with the State's argument that this poses a different situation than if he had specifically referred to a particular prior conviction as in appeal No. 82—66.

Inasmuch as we have previously concluded that the concurrent sentences meted out in the joint sentencing hearing must be vacated and the cause remanded for a new sentencing hearing, we will not discuss whether, in other circumstances the sentences might be upheld on the totality of the record in this particular appeal. We find no indication here that the trial judge was aware of the invalidity of any

of the prior convictions from which an inference might otherwise have been drawn that they were not considered. (See *State v. Fleishman* (9th Cir. 1982), 684 F.2d 1329, 1346.) We would note, however, that even without the invalid convictions the record of prior convictions for serious offenses remained substantial. These included five additional armed robbery convictions, two armed violence convictions, and a kidnaping conviction. In addition, there were eight robbery and two armed robbery indictments, two armed violence indictments, and a criminal damage to property indictment pending against defendant at the time of the sentencing hearing.

### 2

The argument is made in this appeal also that this offense did not involve exceptional brutal and heinous behavior as a basis for an extended term. While in this case there was testimony that the defendant armed with a gun threatened to "blow [the victim's] brains out," we again cannot agree, for the reasons previously stated in the appeal in No. 82—66, that the conduct here involved exceptionally brutal and heinous behavior as perceived under the statute.

### No. 81—817

Defendant contends, as to his conviction of the armed robbery and armed violence arising from the September 10, 1980, incident at the Burger King restaurant in Lombard, that the trial court abused its discretion by not granting his motion for a severance of the charges, that the court erred in denying his *in limine* motion to prevent an in-court identification by a witness who viewed him at a pretrial appearance, that it was error to admit into evidence sunglasses which were not identified as having been worn by the defendant during the Burger King robbery, and that a requested instruction on robbery as a lesser-included offense of armed robbery should have been submitted. He also contends that a new sentencing hearing is required and that his convictions for armed violence must be vacated because of the one-act one-crime rule.

### 1

In this appeal counts I and II of the indictment allege that the defendant and Edward Miller committed armed robbery and armed violence in connection with the September 10, 1980, incident at the Burger King restaurant in Lombard and that defendant and Miller also committed armed robbery, armed violence and attempted aggravated kidnaping in an incident involving John Byrd on September 10, 1980. Defendant argues that the trial court should have severed the

trials of the Burger King and the Byrd robberies because the two were not part of the same comprehensive transaction as required by statute. (Ill. Rev. Stat. 1981, ch. 38, par. 111—4.) We disagree.

■ The most important factors to consider in deciding whether offenses are part of the same comprehensive transaction are their proximity in time and location and the identity of evidence between the two offenses. *People v. Freeland* (1981), 103 Ill. App. 3d 94, 98.

The evidence was that the armed robbery occurred at the Burger King restaurant in Lombard on September 10, 1980, beginning at approximately 11 p.m. John Byrd was an Oak Brook Terrace police officer. He testified that on September 10, 1980, at approximately 11:42 p.m., at a location 1½, miles from the Lombard Burger King, he stopped a 1968 green Plymouth for speeding. The passenger in the car walked back to Byrd, and told him not to move and that he had a gun. The officer identified defendant Reynolds as the passenger and said he had a small chrome-plated .25-caliber automatic in his right hand. Reynolds took Byrd's service revolver and ordered him to sit in the passenger seat of the squad car, and when he was unable to do this because his brief case was strapped to that seat, defendant told Byrd to get into the back seat. As Reynolds tried to open the back door, Byrd ran to a nearby restaurant. The defendant then drove away in the police car. Both the Plymouth and the squad car were recovered later that night. A Burger King cup and two hats were found in the seat of the Plymouth. One of the hats had been identified by witnesses as being the same type of hat worn by Reynolds during the Burger King robbery. There was also a pair of sunglasses found in the Plymouth which were similar to those described by Burger King witnesses as worn by the robber.

On this record we agree with the State's argument that the armed robbery of Officer Byrd was the outgrowth of the Burger King robbery; the defendant was obviously fleeing the scene of that crime within minutes after, from witnesses' testimony, the defendant had left the Burger King restaurant, with instruments of the crime still in the car.

The principal issue in the Burger King incident was the identity of the robber. The second offense supplied evidence which linked the defendant with the hat, gun and sunglasses that the witnesses in the first offense described. It was therefore not error to refuse the motion for a severance based on the court's exercise of discretion. See *People v. Mikel* (1979), 73 Ill. App. 3d 21, 27; *People v. Daniels* (1976), 35 Ill. App. 3d 791, 797-98.

2

Defendant also argues that the trial court should have granted his motion *in limine* by which he sought to bar the identification testimony of Janice Jelinek, a Burger King employee who witnessed the robbery. He argues that the identification was tainted by an impermissibly suggestive, though fortuitous, pretrial confrontation. Apparently Jelinek was with a class on a visit to the courthouse and observed the defendant in the courtroom. According to defense counsel's recollection of what Jelinek told him, the defendant's case was being called on May 27, 1981, and defendant approached the bench. As a result of observing him, Jelinek was able to inform the State's Attorney's office that she could identify the defendant. The record is not clear as to which of the defendant's cases was being called on that date.

The trial judge denied the *in limine* motion to disqualify Jelinek from testifying to defendant's identification but allowed defense counsel to refer to this confrontation in cross-examining Jelinek.

Admissibility of identification evidence allegedly derived from suggestive pretrial confrontations or procedures is governed by principles set forth in *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243. In *Manson*, the court held that evidence derived from unnecessary suggestive confrontations may be admitted if the totality of the circumstances indicates that the out-of-court identification possesses sufficient *indicia* of reliability. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 110, 115, 53 L. Ed. 2d 140, 151, 154, 97 S. Ct. 2243, 2251, 2253; see also *People v. Lutz* (1982), 103 Ill. App. 3d 976, 982.) The basic issue is whether the in-court identification is based on an out-of-court confrontation which was so impermissibly suggestive as to create a substantial risk of misidentification. (*People v. McTush* (1980), 81 Ill. 2d 513, 518.) The defendant has the burden to show that the pretrial confrontation is impermissibly suggestive; if this is accomplished, the State may still establish, by clear and convincing evidence from the totality of the circumstances, that the witness' identification has an origin, based on the witness' memory of events at the time of the crime, independent from the impermissible procedure. *People v. McTush* (1980), 81 Ill. 2d 513, 520.

■ Here the confrontation admittedly was wholly fortuitous and not planned by the police. While an accidental confrontation may still be impermissibly suggestive (see *United States ex rel. Ragazzini v. Brierley* (W.D. Pa. 1970), 321 F. Supp. 440, 443; *Green v. Loggins* (9th Cir. 1980), 614 F.2d 219), the out-of-court identification may be acceptable if it is "unprompted and positive." *People v. Lutz* (1982), 103 Ill. App. 3d 976, 982; *People v. Braxton* (1980), 81 Ill. App. 3d

808, 816.

■ The record is insufficient to demonstrate that the confrontation was in any way impermissibly suggestive. In this connection it should be noted that the post-trial motion asserts error in the trial court's failure to grant the motion *in limine* but does not claim that the court erred in failing to conduct a further hearing as to the conditions surrounding her identification at the accidental encounter. Under the circumstances the error, if any, would have been the failure to conduct a further hearing to determine whether or not the out-of-court confrontation was unprompted and the identification there positive. The defense counsel at that point, however, did not ask for a hearing, and on the evidence then before the court we find no error in denying the *in limine* motion.

Even if we were to hold that it was error to not inquire further into the circumstances of the confrontation by the court *sua sponte* we would find such error harmless beyond a reasonable doubt.

Another eyewitness, Darlene Lynch, made a positive identification of the defendant untainted by any pretrial encounter within the favorable conditions for identification. She testified that she saw the defendant in good light, she spoke to him prior to the offense telling him that the restaurant would be closed in a few minutes, and saw his face entirely when he was only a few feet away and later when he was only inches away. Further, Jelinek in court testified that she had been able to see the defendant for one to two minutes and his entire face unobstructed for ten seconds. She had also observed him in the restaurant prior to the robbery. She supplied the police with information of the defendant's height, weight and clothing even if her positive identification on direct examination had been impermissibly tainted by her out-of-court confrontation. We are satisfied that her testimony in court would not have affected the outcome of the case. It was clearly brought out on cross-examination that she was not able to select the defendant's picture from the photographic lineup although she did narrow down the selection to two or three persons including the defendant. She was not entirely certain in court as to the identification, stating that she was only about 85% sure. The weakness of her testimony was clearly before the jury and they could consider it along with the positive testimony of Darlene Lynch and the agreement among the witnesses as to the height, long hair, beard, attire, hat and sunglasses worn by the robber.

From the totality of the record we conclude that in any event Jelinek's identification testimony in court, if error, is harmless beyond a reasonable doubt.

### 3

■ Defendant argues that the trial court erred in allowing the State to introduce sunglasses found in the glove compartment of the green Plymouth that defendant had been driving before robbing Byrd, according to Byrd's testimony. Defendant maintains that proper foundation for introducing these glasses was lacking because the sunglasses were never specifically connected with either offense allegedly committed by defendant. This argument has been waived by defendant's failure to object to the introduction of the sunglasses at trial or to raise the issue in a post-trial motion.

### 4

■ Defendant argues that the evidence that he did not use a weapon during the Burger King robbery, though weak, was sufficient to require his instruction on simple robbery to have gone to the jury. We disagree. All the witnesses stated that defendant used a gun, with the only conflict in the testimony being as to how much of the gun they saw. Lack of any evidence contrary to proof that there was a gun, justified the trial court's refusal to give the instruction. *People v. Malaszenko* (1979), 76 Ill. App. 3d 1, 7.

■ Defendant's final contention in appeals Nos. 82—86 and 82—87 is that the sentences imposed upon him are excessive. In view of our conclusion that the cases be remanded for a new sentencing hearing at which the court will not consider any convictions which have been reversed or vacated, we do not need to deal with this issue here.

In No. 82—86 we uphold the judgment of the trial court denying the motion to vacate the guilty plea and affirm the judgment of conviction. The cause is remanded for a new sentencing hearing in accordance with this opinion.

In No. 82—87 the judgment of conviction of the defendant for armed robbery is affirmed, the judgment of conviction and sentence for armed violence is vacated and the cause is remanded for a new sentencing hearing.

In No. 81—817 the judgment of conviction for armed robbery is affirmed, the judgment of conviction and sentence for armed violence is vacated and the cause is remanded to the trial court for a new sentencing hearing.

Affirmed in part, vacated in part and remanded.

LINDBERG and VAN DEUSEN, JJ., concur.