Johnnie JONES, Jr., Petitioner–Appellee,

v.

James THIERET, et al., Respondents–Appellants.

No. 87–2490.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1988.
Decided May 11, 1988.

**458**

Arleen C. Anderson, Asst. Atty. Gen., Chicago, Ill., for respondents-appellants.

Karen Munoz, Asst. State Appellate Defender, Springfield, Ill., for petitioner-appellee.

Before WOOD, POSNER, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Ten years ago, Johnnie Jones invaded a closed diner, terrorized the occupants, and stole $550. He took the gun from a deputy sheriff who happened to be in the diner. Although no one resisted, Jones fired at least four shots from his revolver and the deputy's magnum. One shot was discharged so close to the deputy's face that it caused powder burns. We do not know whether Jones missed at point blank range or was simply trying to frighten the patrons.

Jones pleaded guilty to eight crimes arising out of this episode: two armed robberies (of the money and the gun), two felony thefts, and four counts of armed violence (assault with deadly weapons). The state dismissed four counts charging attempted murder. The state judge could have imposed consecutive penalties aggregating 190 years for these crimes. The felony theft counts carried maximums of five years each, and the other six counts had maximums of 30 years each. Ill.Rev.Stat. ch. 38 ¶ 1005-8-1. Instead he sentenced Jones to eight concurrent terms (the longest of which is 60 years' imprisonment) under Ill.Rev.Stat. ch. 38 ¶ 1005-5-3.2(b), then a year old. This statute allows the augmentation of a criminal sentence when the defendant has been convicted of earlier, equally-serious felonies, § 3.2(b)(1), or when "the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty", § 3.2(b)(2). Jones had been convicted of burglary (twice), assaulting a prison guard, and reckless homicide. The trial judge invoked the statute on account of these convictions and on account of the gunfire, explaining:

> The court finds that [Jones's] conduct constitutes a heinous crime in that the commission of that offense was accompanied by brutal and heinous behavior indicative of wanton cruelty. The court finds that the discharge of the weapon in close proximity to the face and head of Deputy Tjarks was an extremely brutal act, one which only by the grace of God did not result in homicide, and certainly was not due to any mercy on the part of [Jones] that it did not result in a homicide.

The Appellate Court of Illinois affirmed the sentence, *People v. Jones*, 73 Ill.App.3d 99, 29 Ill.Dec. 342, 391 N.E.2d 767 (4th Dist. 1979), on the "brutality" ground alone. The prior convictions did not count, the court observed, because ¶ 1005-5-3.2(b)(1) refers to convictions "in Illinois", and Jones's were in Wisconsin. The shooting, however, the court thought enough to invoke § 3.2(b)(2). Noting that "[t]here is no case in Illinois called to our attention which defines 'exceptionally brutal or heinous behavior indicative of wanton cruelty'" (29 Ill.Dec. at 344, 391 N.E.2d at 769), the court turned to the definition of "wanton" given in *Bartolucci v. Falleti*, 382 Ill. 168, 174, 46 N.E.2d 980, 983 (1943), a definition focusing on the creation of unnecessary risk and excluding any mental element. The court thought that Jones's conduct satisfied the definition of "wanton" in *Bartolucci* and affirmed the sentence, rejecting a

more restrictive interpretation of an enhancement statute that had been adopted by the Supreme Court of Florida. 29 Ill. Dec. at 345, 391 N.E.2d at 770, disagreeing with *State v. Dixon,* 283 So.2d 1 (1973).

The Supreme Court of Illinois declined to review this decision. Two years later, however, when it first construed the enhancement statute, it adopted a definition very similar to the one the appellate court had rejected in Jones's case. *People v. LaPointe,* 88 Ill.2d 482, 501, 59 Ill.Dec. 59, 68, 431 N.E.2d 344, 353 (1981). It defined "heinous" as "hateful or shockingly evil" and "brutal" as "grossly ruthless" or "cruel and cold blooded". Subsequent decisions applying *LaPointe* show that it is most unlikely that Jones's conduct would today be an adequate basis for an enhancement under § 3.2(b)(2)—at least not without proof that Jones was trying to kill the deputy sheriff. See, e.g., *People v. Kane,* 140 Ill.App.3d 928, 95 Ill.Dec. 279, 489 N.E. 2d 500 (1st Dist.1986) (defendant shot cab driver during a robbery; enhancement held inappropriate); *People v. Reynolds,* 116 Ill. App.3d 328, 71 Ill.Dec. 849, 451 N.E.2d 1003 (2d Dist.1983) (defendant put gun to victim's head; enhancement held inappropriate).

Jones might have returned to the courts of Illinois, arguing along the lines of *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), that the change in the law called for a reduction in his sentence. Illinois does not appear to entertain such contentions, however. See Ill.Rev.Stat. ch. 110 ¶ 10–102; *People v. Clark,* 84 Ill.App.3d 186, 39 Ill.Dec. 697, 405 N.E.2d 450, 452 (3d Dist.1980); *People ex rel. Berlin v. Twomey,* 27 Ill.App.3d 1074, 328 N.E.2d 58 (1st Dist.1975). So Jones filed a petition for a writ of habeas corpus in federal court. There he attempted to argue that the 60–year sentence violated the Cruel and Unusual Punishments Clause of the eighth amendment, applied to the states through the fourteenth. As Jones had not made such an argument on direct appeal, the district court concluded that the claim was barred under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). See *Murray v.*

*Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Jones has abandoned the point on appeal, so we shall not have to decide whether to follow *United States v. Rhodes,* 779 F.2d 1019 (4th Cir.1985), which holds that no sentence less than life without possibility of parole is disproportionately high for a felony. The proposition that "disproportionality" analysis depends on matching kinds of sentences (death, cadena temporal (see *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910)), denationalization, life without parole, life with parole, terms of years, fines) to categories of crimes (murder, treason, violent felonies, fraud, traffic offenses)—rather than on inquiring case by case whether the punishment fits the crime—has its attractions on both historical and prudential grounds. It is not, however, a subject we need to explore today.

■ What Jones preserved in state court was the argument that ¶ 1005–5–3.2(b)(2) does not authorize an enhancement for the kind of conduct in which Jones engaged. The district court concluded that the Appellate Court of Illinois had made an error of Illinois law by failing to anticipate the holding of *LaPointe.* An error of state law is not enough to issue a writ of habeas corpus, for 28 U.S.C. § 2254(a) provides that the writ may issue "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984). See also, e.g., *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); *Mosely v. Moran,* 798 F.2d 182, 185 (7th Cir.1986); *Nichols v. Gagnon,* 710 F.2d 1267, 1269 (7th Cir.1983); *United States ex rel. Hoover v. Franzen,* 669 F.2d 433, 436–37 (7th Cir. 1982). So the district court needed a hook to turn the violation of state law into a violation of the Constitution. This it found in the principle that there must be evidence of each element of the offense sufficient to convince a rational trier beyond a reasonable doubt, a principle enforceable on col-

lateral attack. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under a correct interpretation of Illinois law, the district judge concluded, a sentence may be enhanced only for the most wanton and gross cruelty; a rational trier of fact could not conclude beyond a reasonable doubt that the evidence satisfied the standard of *LaPointe;* therefore the Constitution requires Jones to be resentenced. The court issued a conditional writ, to become absolute unless Illinois resentenced Jones within 120 days.

█ This method, however, is simply the vindication of the "correct" state law with surplus intermediate steps. Forbidden by the language of § 2254 to enforce state law directly, the district court traveled a route that turns every violation of state law into a violation of the Constitution. This could not have been what either Congress or the Supreme Court had in mind when providing for collateral attack on the basis of violations of federal law, but not of state law. It has long been understood that a state may violate its own law without violating the Constitution, e.g., *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948): "We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." See also, e.g., *Garner v. Louisiana*, 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961) ("We of course are bound by a State's interpretation of its own statute and will not substitute our judgment for that of the State is [sic] when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court."); *Hebert v. Louisiana*, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926); *Patterson v. Colorado*, 205 U.S. 454, 459–61, 27 S.Ct. 556, 556–57, 51 L.Ed. 879 (1907).

Knowing how this must come out, and seeing how to get there in light of *Jackson*, are two different things. For *Jackson* can be seen as doing what *Pulley, Smith, Garner*, and many other cases said could not

be done. Since evidence can be sufficient only in relation to a rule of law, a declaration that evidence is insufficient means either that (a) the tribunal did not understand the law, or (b) the tribunal misapplied the law. In either case, it seems, *Jackson* calls for a court to review state law and, having found a violation, to supply a federal remedy. Since the Court disclaimed any such power in *Jackson* itself, however, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16, this cannot be the right approach. See Deborah Jones Merritt, *Federal Review of the Evidence Supporting State Convictions*, 79 Colum.L.Rev. 1577, 1585–89 (1979); John Calvin Jeffries, Jr. & Paul B. Stephan III, *Defenses, Presumptions, and Burden of Proof in the Criminal Law*, 88 Yale L.J. 1325 (1979).

*Jackson* assumes that the state has correctly defined its own law. A review of the evidence ensures that states stick to their legal interpretations, while they are in force. Criminal proscriptions must be announced in advance of the conduct (the Ex Post Facto Clause sees to that) and must be adhered to until disavowed in public. A retroactive change by a legislature violates the Ex Post Facto Clause; an equally retroactive substantive change by the courts violates the Due Process Clause. See *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Announcing one legal rule while applying another (by overlooking a factual deficiency under the announced rule) presents the same problem as an unannounced change in the legal rule: in either case the accused could not have known the law's requirements when he acted.

We can now see one problem with the district court's approach. *People v. Jones* did not suddenly change state law. It was the first published interpretation of ¶ 1005–5–3.2(b)(2). No one could have relied on a different view until after *LaPointe* in 1981. Words such as "wanton" do not have a single, natural meaning creating reliance interests on their own. And the district court is not authorized to say that *People v. Jones* was wrong even when

announced in 1979. Jones and the State of Illinois litigated the meaning of § 3.2(b)(2), and the state won. The state court issued a reasoned opinion. (Contrast *Cole v. Young*, 817 F.2d 412 (7th Cir.1987), which depends on the absence of a reasoned disposition by the state court.) It has thereby established the meaning of state law for these parties. *Hicks v. Feiock*, —— U.S. ——, ——, 108 S.Ct. 1423, 1428–29, 99 L.Ed.2d 721 (1988); *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 238, 61 S.Ct. 179, 184, 85 L.Ed. 139 (1940). A change of law does not permit relitigation of a settled question, *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), at least not without a new controversy—for example, the new tax levy in *Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984). See generally *Frank v. Mangum*, 237 U.S. 309, 333–34, 35 S.Ct. 582, 589–90, 59 L.Ed. 969 (1915); *Brown v. Allen*, 344 U.S. 443, 458–60, 73 S.Ct. 397, 407–09, 97 L.Ed. 469 (1953).

Collateral attack in criminal cases is distinctive because liberty is at stake, but Congress always has limited the federal courts' power to revisit decisions to those based on federal law. Jones could argue that under 28 U.S.C. § 1738 the federal court owes no greater respect to *People v. Jones* than a state court would afford that decision, so that if a state court would reexamine a question of state law on collateral attack, so too may (and must) a federal court. But Jones does not contend that Illinois reopens state-law issues on collateral attack; so far as we can tell, it does not. See *Clark, Berlin*, and *People v. Cowherd*, 114 Ill.App.3d 894, 70 Ill.Dec. 460, 464, 449 N.E.2d 589, 593 (2d Dist.1983) (collateral review permitted on constitutional and jurisdictional questions only). At all events an argument of this sort runs headlong into § 2254, which allows collateral attack only when the claim is based on the Constitution, laws, or treaties of the United States. Jones therefore lacks an adequate reason to relitigate a question of state law settled between these parties in 1979. He must argue not that it is wrong, but that it

is *so* wrong, so surprising, that the error violates principles of due process under *Bouie*. He does not make this argument— for the good reason that the decision is not *that* far off base. The district court did not find a gross and unconstitutional error; it found an ordinary sort of error that produced constitutional difficulties only when mixed with *Jackson v. Virginia*. Because "ordinary" error is outside the scope of § 2254, the district court should have accepted *People v. Jones* as correctly stating the law of Illinois in force in 1979—a law since reinterpreted by *LaPointe*, but too late for Jones. If the state court was constitutionally entitled to reach the disposition it did, then the basis for an argument under *Jackson* vanishes, for the evidence was adequate to support the decision given the legal interpretation of the statute.

Even if the district court could have reviewed the state-law question settled in *People v. Jones*, this would not have carried the day without the aid of *Jackson*. That case rested principally on the reasonable-doubt standard, which *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), makes binding on the states. The Court believed that *Winship* could be circumvented unless federal courts reviewed the record to satisfy themselves about the sufficiency of evidence.

■ This rationale of *Jackson* does not apply to sentencing. A state need not prove beyond a reasonable doubt the facts that a judge deems salient to sentencing. Quite the contrary, the Court has tolerated the imposition of sentences on hunch, hearsay, anything other than "misinformation of constitutional magnitude", *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). See, e.g., *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (enhancement for failure to implicate confederates); *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) (enhancement on suspicion that the accused committed perjury during the trial); *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) (enhancement on the basis of information not revealed in open

court); *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (tracing the history of sentencing).

Although this court has reserved questions concerning the proper treatment of a sentence based on false information, *Johnson v. United States,* 805 F.2d 1284, 1288–89 (7th Cir.1986); *Blake v. United States,* 841 F.2d 203, 205–06 (7th Cir.1988), it has never doubted that the constitutional standard of proof in sentencing is less than "beyond a reasonable doubt". The quality of proof required to select a sentence must be similar to (if not weaker than) the "reasonably satisfied" standard employed to revoke probation, see *United States v. Crawley,* 837 F.2d 291 (7th Cir.1988), for revocation takes away liberty currently enjoyed, while the selection within a range affects only how many future years are to be served (given that liberty is bound to be curtailed anyway). No matter the standard, it is lax compared with reasonable-doubt. The foundation for *Jackson* is therefore missing when sentencing, rather than guilt, is at issue.

We recognize that *Williams v. Duckworth,* 738 F.2d 828, 831 (7th Cir.1984), applied the *Jackson* standard to review the evidence underlying one sentence. This decision was based on the state's decision that the reasonable-doubt standard applied to the disputed facts in question. *Twyman v. State,* 431 N.E.2d 778 (Ind.1982). Take away that requirement, and you take away the basis of *Jackson. Williams* stands for no more than that *when* proof beyond a reasonable doubt is necessary, the *Jackson* standard tags along. It may be that *Jackson* has a broader meaning, enforcing *whatever* standard of proof happens to apply, so that if the preponderance standard applies to a given question there must be collateral review to check on the adequacy of evidence to satisfy that burden, but we do not read *Jackson* so. The Court was concerned about the potential for evasion of a constitutionally-prescribed minimum, not about error in the application of a standard the state freely selected.

The Due Process Clause could in principle require proof beyond a reasonable doubt in sentencing. A state may define crime directly (through substantive elements of the offense) or indirectly (through criteria labeled "sentencing" standards but substantive in operation). A state may define murder as deliberate killing and manslaughter as careless killing, with greatly different sentencing ranges. If a state should define as "murder" all killings, no matter the mental state, and then treat intent as a sentencing consideration, we assume that the state would have to prove intent beyond a reasonable doubt despite its effort to remove this element from the definition of the "crime". See *Greider v. Duckworth,* 701 F.2d 1228, 1235–37 (7th Cir.1983) (concurring opinion). This possibility led to much debate in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). But cf. *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), suggesting that as long as an element is not part of the formal definition of the offense, *Winship* does not apply.

Illinois did not smuggle an element of the offense into a sentencing statute. Brutality in the course of committing a crime is traditionally considered as part of sentencing. The brutality of conduct not only influences the selection of a sentence within a range but also may play the dominant role when the judge decides whether to make sentences run concurrently or consecutively. The trial judge in this case could have employed Jones's efforts to terrorize the diner's patrons as a reason to give consecutive sentences adding up to 190 years, without any reference to the enhancement provisions of § 3.2(b)(2). Since he could have done this without anything like "proof beyond a reasonable doubt", he may do the same thing under § 3.2(b)(2). *McMillan,* 477 U.S. at 87–88, 106 S.Ct. at 2417–18. Illinois courts have concluded that neither the Constitution nor § 3.2(b)(2) itself calls for proof beyond a reasonable doubt. *People v. Perez,* 101 Ill.App.3d 64, 56 Ill.Dec. 488, 497, 427 N.E.2d 820, 829 (1st Dist.1981). Jones does not take issue with this conclusion. It follows that *Jackson* is inapplicable.

Before the Court decided *Winship*, it sometimes reviewed criminal convictions to see whether any evidence was behind them. E.g., *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *Harlan v. McGourin*, 218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101 (1910). See also *Superintendent of Walpole v. Hill*, 472 U.S. 445, 453, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), holding that if prison officials establish rules constraining their discretion in removing good time credits, their decisions must be supported "by a certain amount of evidence." Perhaps the conclusion that *Jackson* does not govern means that we still have a *Thompson* inquiry to perform. There are, however, two other possibilities. One is that the federal court plays no role in reviewing state sentencing beyond the one called for by the eighth amendment. The existence of a specific rule on the subject counsels against the implication of a second inquiry out of the grand generalities of the Due Process Clause. Cf. *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 222–23, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985) (reserving the question whether there is any substantive review of decisions depriving persons of property in civil cases); *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986) (eighth amendment, as the more specific provision, supplies the exclusive standards for use in evaluating use of force in prisons). The second possibility could be called judicial x-ray vision: the federal court could look through the form of the enhanced sentencing scheme and ask whether the state could have imposed this sentence on these facts anyway. This question could be asked either under the eighth amendment (aligning the due process and disproportionality inquiries) or under state law (on the principle that any sentence lawful when imposed under the "unenhanced" sentencing system cannot become unconstitutional because imposed under the enhancement scheme).

We need not choose among these possibilities, because they all lead to the same result. By our prior discussion, the definition of the legal elements of § 3.2(b)(2) given in *People v. Jones* is the law of Illinois, at least for these litigants. If no evidentiary inquiry at all is permissible, the constitutional question answers itself. If the *Thompson* standard applies, again there is no serious problem; there is "some" evidence that could lead a reasonable judge to believe that Jones acted in a wanton and cruel manner. If the x-ray vision approach applies, still there is no problem. The 60–year sentence was within the range allowed in the absence of enhancement and is consistent with the Cruel and Unusual Punishments Clause (the latter conclusion being inevitable in light of Jones's forfeiture of that argument).

The same conduct engaged in today in Illinois probably would not be handled under § 3.2(b)(2). Jones may be a victim of circumstance, of being the first to be prosecuted under that statute, and so has experienced an unhappy but not unique fate: judges often modify rules of law, leaving the subjects of the initial cases with different treatment. Unequal treatment is not on that account unconstitutional. The evolution of legal rules is a feature of any legal system. The remedies lie in state law and in an appeal to the pardoning power.

REVERSED.